STATE EX REL JENSEN, Plaintiff v. WELLS, Defendant

(281 N. W. 99.)

(File No. 8108. Opinion filed August 13, 1938.)

*O'Keeffe & Stephens,* of Pierre, for Plaintiff.

*Clair Roddewig,* Atty. Gen., *Donald Fellows,* of Mitchell, and *L. J. Ballou,* of Bridgewater, for Defendant.

RUDOLPH, J.  At the 1937 session of the legislature there was passed an act known as Senate Bill No. 176, which appears as Chapter 223 of the Session Laws of 1937.  Thereafter a petition to refer this law to a vote of the people pursuant to the provisions of Sections 5067 to 5074, inclusive, Rev. Code 1919, was circulated throughout the state.  On June 3, 1937, there was delivered to the Secretary of State the petition which had been cir-

culated and which purported to contain the names of 30,416 peti-
tioners. It is stipulated that the number of petitioners necessary
to invoke the referendum under the provisions of our Constitution
and statutes is 14,696. Plaintiff commenced this original proceed-
ing in this court and contends that more than 15,720 purported
signatures appearing on the petition are invalid. Upon the applica-
tion of the plaintiff this court appointed a referee to take the
testimony of witnesses and to transcribe the same. Many months
were spent in the taking of testimony, and the record is one of the
most, if not the most, voluminous ever presented to this court. The
case is now before us for our determination upon the record made.
This being an original proceeding in this court, and the referee
having found no facts, it has become necessary for us to pass upon
and determine all questions of fact. We will not attempt to state
the facts as we have found them as a separate part of this opinion,
but will give our determination of the facts in connection with the
different questions involved. As will be hereinafter disclosed, very
few of the 30,416 signatures appearing upon the fact of this peti-
tion have escaped attack by the plaintiff. A considerable portion
of this attack has raised questions of fact, and the task of passing
upon these facts has necessarily been arduous. Obviously, time
and space will not permit a consideration of each individual signa-
ture attacked. We have attempted to group and classify the differ-
ent objections to the petition as made by the plaintiff, and our dis-
cussions will of necessity relate itself to these different groups or
classes.

The separate sections of the petition are in the form, as
follows:

"Petition for Referendum

"We, the undersigned, qualified electors of the State of South
Dakota, hereby petition and require that the Act of the Legislature
of the State of South Dakota, entitled, "An Act to Repeal Section
10 of Chapter III of the Special Session of the Legislature of the
State of South Dakota for the Year 1936; to Amend Subsection
(c) of Section 19 Thereof; to Amend Subsection (c) (d) (f)
(h) and (i) of Section 6 Thereof, and Subsection (g) of Sec-
tion 11 Thereof; to Repeal Subsection (e) of Section 6 Thereof;
to Abolish the Unemployment Compensation Commission of South

Dakota; to Create the Office of Unemployment Compensation Commissioner of South Dakota to Administer the 'Unemployment Compensation Law,' and Define His Duties; and to Transfer the Functions and Duties of the Director of State Employment Service to the Unemployment Compensation Commissioner", and known as Senate Bill No. 176, which was passed by the Twenty-Fifth Session of the Legislature of the State of South Dakota on the 5th day of March, A. D., 1937, and approved by the Governor of the State of South Dakota on the 9th day of March, A. D., 1937, be referred and submitted to a vote of the electors of the State of South Dakota at the next general election to be held in the State of South Dakota, before going into effect.

| Name | Residence | Business | Post Office Address | Date of Signing |
|------|-----------|----------|---------------------|-----------------|
| 1— | | | | ." |

Each section is composed of one page and has blank spaces for sixty-three signatures appearing on the front and back of the page. On the back and at the foot of the page appears the verification in the statutory form. See section 5074, R. C. 1919.

At the outset, we classify plaintiff's attack upon the petition into two large or main groups: First, the attack upon the verification whereby plaintiff seeks to invalidate the verification appearing upon the different sections of the petition, and thereby nullify all of the names appearing upon such sections in which it is claimed the verifications are invalid; second, the attack upon the individual signatures because of the manner or form of signing.

We consider first the verification. The requirement for the verification of a referendum petition is found in Section 5074 R. C. 1919, which is as follows:

"Every person who shall circulate and secure signatures to a petition to initiate or submit to the electors any law under the provisions of section 1, article 3, of the constitution, shall, before filing said petition with the officer in whose office the same is by law required to be filed, make and attach to the petition an affidavit in the following form, which he shall subscribe and swear to before some officer qualified to administer oaths and having an official seal:

"State of South Dakota,  
"County of .......... } ss.

"I, ........................, being first duly and solemnly sworn, on my oath state, that I am a qualified voter of the State of South Dakota. That I am acquainted with all the persons whose names are affixed to the above and foregoing paper and know that each one of said persons signed said paper personally and added thereto his place of residence, his business, his postoffice address and date of signing. That each and all of said persons are residents and qualified electors of the county of ................., state of South Dakota. That each of said persons signed said petition with full knowledge of its contents. That I have received no compensation whatever or promise of compensation for my services in circulating said petition.

"......................................

"Subscribed and sworn to before me this .......... day of ........................, 19.....

"......................................"

The above section of our code was construed in the case of Morford v. Pyle, 53 S. D. 356, 220 N. W. 907, wherein it was said:

"These various acts, viz., signing the petition, inserting the signer's residence, his business, his post office address, the date of signing and the verification by the person who circulates the petition, are all placed on the same footing by the Legislature; so that the insertion of these data by the signer and the verification by the circulator are just as important and as much required by the law as the names of the signers themselves. * * *

"The affidavit required by section 5074 is for the purpose of establishing the genuineness of the signature on the petition. But, if the person who makes the affidavit is not a qualified voter of the state, or if he is not acquainted with all the persons whose names appear on the petition, or if each one of the persons whose names appear on the petition did not personally sign the same and add thereto his place of residence, his business, his post office address, and the date of signing, or if each person whose name appears on the petition is not a resident and qualified voter of the county named in the affidavit, and that each person who placed his

name on the petition did so with knowledge of its contents, or if the person who signed the affidavit received any compensation or promise of compensation for his services in circulating the petition, then the affidavit is false—necessarily false—because the law requires him to have personal and actual knowledge of all the facts, and the petition is left without the required affidavit, for a false affidavit is no better than no affidavit at all."

Plaintiff contends that, giving full effect to the language above quoted from the Morford Case, mere falsity of the affidavit renders it entirely ineffective within the meaning of the statute and destroys the section of the petition to which it is attached. While this court did in the Morford Case refer to the affidavits there involved as being false, we are convinced that it was not the intention to there hold that mere falsity of an affidavit is sufficient to render the affidavit invalid. The court in that case cited with approval the cases of Barkley et al. v. Pool, 103 Neb. 629, 173 N. W. 600; State ex rel. McNary v. Olcott, 62 Or. 277, 125 P. 303; and in each of these cases it was held that the verification must be made fraudulently before it will destroy the section of the petition to which it is attached. In the Oregon case, the court said: "As the circulator of a petition is the agent of the signer, and his oath is the only evidence of the genuineness of the signature, it follows as a matter of course that, where he is shown to have acted fraudulently, the value of his verification is destroyed, and the petition must fall, unless the genuine signatures are affirmatively shown. But, in the absence of evidence of intentional fraud or guilty knowledge on the part of the circulator, it would be an unjust rule to deprive the honest signer of his right to have his signature counted * * *."

The Nebraska case takes for its support the Oregon case and discloses a situation where several thousand names were fraudulently inserted in the petition. This court in the more recent case of State ex rel. Coon v. Morrison, 61 S. D. 339, 249 N. W. 318, clearly took the position that it was the holding in the Morford Case that the affidavit must be established as fraudulent before it could be held invalid. Speaking with reference to the Morford Case, it was said in the Coon Case: "That case had been tried in the circuit court, and the fraudulent matters referred to in our opinion had been established by the evidence

taken at the trial. * * * The mere fact that it appears on the face of the petition, following the signature of a signer, that his residence is in a county different than that shown in the affidavit, does not establish that the affidavit is fraudulent. It is possible that the signer of the petition did not state correctly the county in which he resides, or there might be other facts and circumstances which would establish that the affidavit was in fact not fraudulent."

We think it clear therefore that since the case of State ex rel. Coon v. Morrison, if not before, the affidavit must not only be false, but it must also be made fraudulently, which fact must be established by evidence before it can be held that the affidavit is invalid and thereby destroy the whole section of the petition to which it is attached. The question then arises, what constitutes a fraudulent affidavit within the meaning of this statute. No precise definition can be given or should be attempted.

"Courts have never yet undertaken to lay down any specific and definite rules in regard to fraud, by which, in all cases, they will be controlled in giving relief, as said by Lord Hardwicke: 'Fraud is infinite, and, were courts of equity once to lay down rules, how far they would go, and no further, in extending the relief against it, or to define strictly the species of evidence of it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive.' Parkes, Hist. Ch. 508." Meldrum v. Meldrum, 15 Colo. 478, 24 P. 1083, 1086, 11 L. R. A. 65.

Clearly mere falsity of the affidavit does not establish that it is fraudulent; there must be scienter or knowledge. If the affiant has some reasonable ground upon which to believe in the truth of the statement contained in the affidavit, we do not believe the affidavit should be said to have been made fraudulently. It must also appear that there was an intent to deceive. The intent to deceive is the essential element of fraud. 26 C. J. 1115, and many cases cited. A good statement is as follows: "Fraud cannot exist, as a matter of fact, where the intent to deceive does not exist, for it is emphatically the action of the mind, which gives it existence." Tilghman v. West, 43 N. C. 183.

We have grouped plaintiff's attack upon the verification into several classes, which we will consider separately.

Plaintiff makes no attack upon the verification in the sections of the petition numbered, as follows: 1, 2, 4, 6, 7, 8, 10, 11, 20, 25, 29, 34, 38, 58, 62, 66, 75, 80, 81, 82½, 83, 84, 85, 89, 91, 92, 105, 106, 108, 110, 113, 115, 116, 118, 120, 121, 124, 125, 126, 130, 132, 137, 138, 139, 141, 142, 144, 145, 146, 147, 149, 151, 152, 158, 159, 160, 166, 183, 187, 190, 192, 197, 198, 199, 202, 211, 214, 220, 221, 222, 223, 224, 227, 230, 233, 234, 235, 242, 243, 244, 245, 247, 248, 250, 255, 256, 260, 269, 277, 278, 280, 281, 282, 283, 287, 288, 290, 293, 297, 300, 307, 310, 312, 313, 317, 321, 324, 325, 326, 327, 329, 331, 333, 334, 337, 340, 342, 343, 346, 347, 350, 351, 353, 354, 355, 357, 358, 359, 361, 362, 363, 364, 365, 367, 370, 372, 373, 375, 377, 378, 379, 381, 383, 385, 389, 395, 396, 402, 407, 416, 417, 421, 422, 423, 425, 426, 427, 428, 432, 433, 434, 435, 440, 443, 446, 448, 449, 451, 453, 455, 458, 459, 461, 462, 466, 470, 473, 474, 481, 482, 484, 485, 488, 492, 494, 496, 497, 499, 500, 501, 503, 504, 508, 510, 514, 518, 530, 531, 532, 541, 543, 545, 546, 548, 551, 554, 559, 560, 562, 563, 564, 568, 570, 572, 574, 575, 577, 580, 581, 582, 583, 584, 586, 588, 590, 591, 593, 596, 597, 609, 613, 614, 616, 620, 624, 625, 626, 627, 630, 631, 632, 635, 638, 642, 646, 648, 650, 653, 654, 655, 656, 664, 671, 674, 683, 685, 686, 689, 691, 693, 695, 699, 700, 701, 702, 703, 705, 706, 710, 711, 712, 715, 716, 724, 726, 728, 729, 730, 732, 733, 736, 737, 739, 740, 742, 744, 745, 748, 749, 755, 760, 763, 765, 774, 775, 780, 781, 789, 791, 793, 794, 807, 811, 813, 814, 816, 819, 820, 821, 823, 828, 829, 837, 838, 839, 841, 842, 846, 847, 850, 852, 853, 854, 858, 859, 862, 868, 870, 874, 875, 876, 877, 878, 881, 887, 888, 891, 892, 894, 896, 900, 903, 904, 908, 912, 913, 917, 918, 922, 923, 925, 928, 929, 930, 931, 934, 935, 937, 941, 943, 947, 951, 961, 963, 968, 972, 974, 978, 979, 986, 989, 990, 992, 995, 998, 999, 1001; Total:—7,301 names involved in these sections of the petition.

Plaintiff objects to a large number of the sections of the petition upon the ground, among others, that the sections have been altered by the insertion of material matter. The alteration is not apparent from the face of the petition and in support of this contention plaintiff relies principally upon the testimony of a handwriting expert. We are convinced that in the sections of the petition listed below where this objection has been made, plaintiff has failed to produce evidence which will overcome the presumption of the validity of the sections. We are unable to say from the evi-

dence produced, that any of the sections of the petition listed below have been altered as contended by plaintiff.

■ In a number of the sections of the petition it clearly appears upon the face of the petition that the person who signed did not complete the line by adding the information required by the statute. In most of these cases the person testified that he was incapable of writing anything but his signature which clearly appeared from the manner in which the signature was written, and that he authorized someone else, generally someone of his family, to fill in the remaining part of the line. The circulator in many instances said he believed this proper, and that it was done in good faith. From the manner of the writing, that is, the contrast between the almost illegible signature and the balance of the line, we are convinced that no one could be deceived.

■ Plaintiff objects to certain sections of the petition listed below on the ground that there has been inserted in the sections by some one not the signer, in the residence or post office columns, the abbreviation for South Dakota following the name of the town or city given as the residence or post office address. For reasons hereafter appearing we are convinced that it is not necessary that the name of the town or city in the residence or business column be designated as being in South Dakota, if the name of the town or city given is the name of a town or city within the territorial limits of this state. The additions therefore of the "S. D's." in the residence or post office column would not be material to the validity of the section of the petition, and would not render the affidavit fraudulent.

■ Plaintiff objects to certain sections of the petition listed below on the ground that they have been altered, thereby rendering the affidavit fraudulent. In these sections of the petition, the signer has written numerals in the date column, for example, "4-24-1937". It appears that someone has written over the numeral "4" the abbreviation for the month of April as "Apr." We are convinced that the numeral abbreviation in the date column is a compliance with the statute requiring that the date be inserted. Therefore, the addition of the "Apr." over the "4" becomes immaterial, and cannot be considered as a basis for rendering the affidavit fraudulent.

Plaintiff objects to a large number of the sections of the petition on the ground that they are fraudulent because the manner of circulating was similar to the manner in which the petitions were circulated which were involved in the case of Morford v. Pyle, supra. Many of these sections of the petition must go out. In the sections of the petition listed, plaintiff has failed to produce facts sufficient to show that the affiant did not personally circulate the petition.

■ Plaintiff objects to certain sections of the petition listed below on the ground that the signer is not a resident of the county appearing in the verification. While the fact of nonresidence was established by evidence, nevertheless, we believe that the situation must be covered by the holding in the State ex rel. Coon v. Morrison Case. There is no showing that the affiant had any intent to deceive.

There was an attempt made by plaintiff to establish as to some of the sections of the petition that the circulator's affidavit was false insofar as the circulator swore that the person who signed the petition knew of its contents. The evidence does not sustain this contention in the sections listed.

The above covers the objections of the plaintiff to the sections of the petition listed below. Other objections made by plaintiff to the verification are not involved in these sections. Obviously, time and space will not permit a discussion of the testimony and the facts involved in the different sections of the petition. We have carefully considered each section together with the testimony adduced, and have concluded that in the following instances the verification cannot be held to be fraudulent.

Sections: 12, 15, 19, 27, 28, 31, 33, 37, 39, 40, 41, 42, 44, 45, 46, 51, 53, 54, 55, 57, 60, 61, 63, 64, 67, 68, 76, 77, 88, 97, 99, 102, 103, 104, 112, 128, 129, 131, 134, 136, 153, 173, 175, 176, 184, 193, 195, 204, 205, 206, 207, 237, 241, 251, 252, 257, 261, 265, 266, 267, 292, 303, 308, 314, 330, 332, 338, 345, 368, 369, 371, 384, 386, 388, 390, 392, 397, 400, 408, 410, 412, 414, 420, 424, 429, 437, 438, 441, 450, 456, 464, 468, 475, 480, 487, 491, 498, 507, 511, 512, 517, 521, 524, 527, 533, 535, 536, 537, 538, 539, 547, 550, 552, 553, 556, 561, 565, 567, 571, 573, 576, 578, 585, 587, 594, 595, 598, 599, 600, 603, 605, 606, 611, 612, 615, 618, 621, 629, 634, 640, 652, 659, 660, 662,

665, 667, 668, 675, 679, 680, 687, 688, 690, 723, 754, 756, 758, 759, 766, 771, 772, 776, 778, 779, 808, 812, 815, 817, 833, 834, 835, 855, 864, 866, 873, 879, 886, 895, 897, 901, 906, 909, 914, 915, 919, 921, 927, 932, 939, 940, 945, 949, 952, 953, 954, 955, 958, 967, 985, 988, 991, 993, 994, 1000, 1002. Total:—8,478 signatures.

This brings us to the objection of the plaintiff relating to the individual signatures as distinguished from the objection relating to the verification. The statute, Section 5069, R. C. 1919, requires that "each elector shall add to his signature his place of residence, business, postoffice address and date of signing." The requirements of this statute have heretofore been construed by this court as requirements of substance and not of form. Shields v. Wells, 65 S. D. 552, 276 N. W. 246, and cases cited.

Plaintiff first contends that, if the signer failed to write either South Dakota or the abbreviation therefor in the residence or business column, the signature should not be counted. We cannot agree. By signing the petition the signer represents that he is a "qualified elector of the State of South Dakota." As disclosed by the body of the petition above set out, the first sentence therein states: "We, the undersigned, qualified electors of the State of South Dakota." It would appear most technical to us after this representation to require that the signer after writing in either the post office or residence column such words as Aberdeen, Flandreau, Pierre, Deadwood, or Canton, be further required to follow such words with the word "South Dakota", or the abbreviation therefor. Section 5073, R. C. 1919, provides: "The petition * * * shall be liberally construed, so that the real intention of the petitioners may not be defeated by a mere technicality."

Plaintiff next contends that where a signer under the residence·column writes merely a street address without giving the town or city, but the town or city appears under the post office address, the signer has failed to give the information required by the statute. We believe the whole line must be read together, and when read together in the light of the designated column headings, it clearly appears, we believe, that the signer in his own hand has given his residence and post office address as required by statute. We hold the same where the signer has written the ward and number under the residence column. In some of the sections of the

petition under residence there appears such words as "St. Nicholas Hotel", "Tiffany Apartments", and other like designations. For the purpose of this opinion only we may concede this objection. In certain sections of the petition the signer has inserted the township or the name of a purported township. On such lines under the post office column appears the designation of the town or city, and when the line is read together, we believe the signer has given the necessary information. If the signer has incorrectly stated his residence, this fact must appear by evidence. This court cannot say, simply from looking at the petition, that the residence as stated is not in fact the residence of the signer.

In many of the sections of the petition the signer has simply given the name of a county in the residence column. We do not believe this to be sufficient. The statute requiring the residence to be stated was enacted, we believe, for the purpose of allowing anyone who wished to investigate the sections of the petition to locate the persons who had signed. While it might be that in some of the counties which are sparsely populated the designation of the county would be sufficient to enable anyone to locate the signer in a reasonable time; in other more thickly populated counties such designation of residence would be of little value. For example a person living in Sioux Falls giving his residence as Minnehaha County would not be of any great aid to anyone investigating the validity of the petition upon which a signer has thus designated his residence. For the same reason we believe that such designations as "farm" or "ranch" under the residence column is not a sufficient designation to comply with the statute.

Plaintiff contends that a designation of "W. P. A." under the business column is an insufficient statement of business. We think in this day and age W. P. A. has a very definite meaning as an occupation or business, and that such designation is sufficient.

In a few instances the signer has failed to add the year in the date column. For the purposes of this opinion only, we may concede that it is necessary to insert the year in the date column. Under prior decisions of this court ditto marks in the date column do not constitute a compliance with the statute. Plaintiff contends that the opinions we have just above expressed with regard to the

manner and form of signing are contrary to the holdings of this court in the case of Shields v. Wells, supra. We cannot agree. We simply held in that case that, where a signer followed his name with the name of the town only, there was no presumption that such town constituted both residence and post office address. The sections of the petition involved in that case were comprised of two different mimeographed sheets, and in regard to the signatures held invalid there was no attempt to conform the writing to the columns headed residence and post office. The signer had simply written his name and followed it with the name of the town. From the form of the petition it was impossible to determine whether that town had been designated as the residence or as the post office address. The sections of the petition in the present case which have been held valid, clearly present a different question. In these sections of the petition the signers have confined their writing to the different columns and under the different columns have set out certain information. We read the information furnished by the signer as a whole and in the light of the different columns indicated on the section of the petition.

Applying the principles above announced, we have deducted from the above sections of the petition which we have held good insofar as the verification is concerned, individual signatures, as follows: First, where it appears that the signer has given only the county in the residence column; second, where such words as "farm", "ranch", "hotel", or "apartment" or a named hotel or apartment, is given under the residence column; third, where the signer has left blank spaces under one or more of the columns; fourth, where the signer has inserted ditto marks in the date column; fifth, where no year has been written in the date column; sixth, where it appears that the signer was not a resident in the county named in the affidavit; and seventh, those signatures on the sections of the petition listed above where it is apparent that the signer did not complete the line. Such deductions amount to 848 signatures. Sections of the petition held good so far as verifications are concerned contain 15,779 signatures. Deducting the 848 invalid signatures from the 15,779 leaves a balance of 14,931 signatures which is more than the statute requires. We are convinced that there are other valid signatures upon the petition. However, it is unnecessary for us to consider the matter further be-

cause the sections listed herein, which we have held valid, contain more valid signatures than the statute requires.

The proceedings are dismissed without costs to either party.

ROBERTS, P. J., and WARREN and SMITH, JJ., concur.

POLLEY, J., (dissenting). I am not able to agree with the majority of the court in the disposition of this case.

The petition was circulated in sections, in different parts of the state, and it is claimed by plaintiff that many of the sections of said petition are not signed or verified in the manner provided by law, and therefore should not be counted.

The statute (§ 5069) provides that: "Such petition shall be signed by not less than five per cent of the qualified electors of the state, and each elector shall add to his signature his place of residence, business, postoffice address, and date of signing," all of which must be done by the petitioner, "in person," which means that he must do it himself, with his own hand. (§ 5071). The law further provides (§ 5073) that such petitions "shall be liberally construed, so that the real intention of the petitioners may not be defeated by a mere technicality." Provided, of course, that the petitioner must express his intention in the manner required by law. Dunn v. Gamble, 47 S. D. 303, 198 N. W. 821.

At the end of each section of the petition the party who secured the signatures thereto must attach his affidavit in which he must state under oath " * * * that I am a qualified voter of the state of South Dakota. That I am acquainted with all the persons whose names are affixed to the above and foregoing paper and know that each one of said persons signed said paper personally and added thereto his place of residence, his business, his post-office address and date of signing. That each and all of said persons are residents and qualified electors of the county of........., state of South Dakota. That each of said persons signed said petition with full knowledge of its contents. That I have received no compensation whatever or promise of compensation for my services in circulating said petition." Such an affidavit is attached to each section of the petition. These affidavits are important essentials of the petition. Upon examination of the affidavit it will be found that in order that it can be true, the person who circulates the peti-

tion must be a qualified elector of the state; he must be personally acquainted with each person who signs the petition; he must know that each person who signed the petition personally added to his signature his place of residence, his business, his post office address and the date of signing, and to know all these facts he must be personally present and see all these acts performed. He must know that each and all of the persons who signed the petition are residents of the county named in the body of the affidavit. He must also know, and he so states on his oath, that each person who signed the petition had full knowledge of the contents of the petition; and lastly, he must state under oath that he has received no compensation, nor promise of compensation for his services rendered in circulating the petition. If the circulator does not have actual knowledge of all these facts, or if he has received compensation, or the promise of compensation, for circulating the petition, then the affidavit is false, and the affidavit and the petition to which it is attached are nullities and should not be counted. This question was considered at length in both O'Brien v. Pyle, 51 S. D. 385, 214 N. W. 623, and Morford v. Pyle, 53 S. D. 356, 220 N. W. 907, where it was established as the rule of this court that a false affidavit was to be regarded as no affidavit at all and the petition to which it is attached can not be counted. Practically every question in dispute in this case had been decided by this court and published in the O'Brien and Morford Cases prior to the circulation of the petition involved in this case, and other questions involved herein were decided in Shields v. Wells, 65 S. D. 552, 276 N. W. 246, since the petition was circulated.

The affidavits attached to the different sections of the petition are, of course, all just exactly alike. The result is, that the petitions when signed must conform to all the requirements of the affidavit, and in all cases where the petition does not comply with all the material requirements of the affidavit, then the affidavit is false, and as we held in the Morford Case, is to be disregarded as a verification of the petition. This leaves the section of the petition to which such affidavit is attached without verification and the names thereon cannot be counted for any purpose.

In the Morford Case we said: "The affidavit required by section 5074 is for the purpose of establishing the genuineness of the signature on the petition. But, if the person who

makes the affidavit is not a qualified voter of the state, or if he is not acquainted with all the persons whose names appear on the petition, or if each one of the persons whose names appear on the petition did not personally sign the same and add thereto his place of residence, his business, his post office address, and the date of signing, or if each person whose name appears on the petition is not a resident and qualified voter of the county named in the affidavit, and that each person who placed his name on the petition did so with knowledge of its contents, or if the person who signed the affidavit received any compensation or promise of compensation for his services in circulating the petition, then the affidavit is false—necessarily false—because the law requires him to have personal and actual knowledge of all the facts, and the petition is left without the required affidavit, for a false affidavit is no better than no affidavit at all."

In the Shields Case, supra, written by Rudolph, Judge, the question of residence and post office address was in controversy, and upon that subject we said: ' "For this court to hold the named town to be post office address and residence of the signer, it must so hold by inference or assumption; that is, it must infer or assume that the residence and the post office of the signer is one and the same. We are convinced that no such inference or assumption should be indulged. The requirements of the statute are explicit; that such requirements were reasonably subject to fulfillment is evidenced by the fact that more than 14,000 signers of this petition met these requirements. To permit the signatures here involved to be counted would be to recede from the standard set by this court in the O'Brien and Morford Cases. In each of those cases it was pointed out that the data required by the statute to be given by the signer is just as important as the signature itself. Where the signature is simply followed by the name of a town without designating whether that town is the post office address or the residence of the signer, such town might be either the post office address or the residence. If intended for the post office address, the signer has failed to give his residence; if intended for the residence, the signer has failed to give his post office address. In either of these events the signer has failed to furnish the data which the statute requires. True, the designated town might be both post office address and residence, but, for this court to so

hold, it must do so either by inference or assumption . An assumption is simply supposing something to be true without proof. Obviously, this petition should not be validated by assumption. An inference is the process of reasoning from something known to something else which naturally follows from it. All we know in this instance is that the signature is followed by the name of a town. It does not, in our opinion, naturally follow from this known fact that such town is both post office address and residence of the signer. It might be either. The statute requires both."

In his complaint herein plaintiff alleges:

"That there was a total of 293,914 votes cast for the office of governor at the 1936 general election in the State of South Dakota (that being the last preceding general election), and in order to be valid a Referendum Petition must contain the valid signatures of not less than 14,696 qualified electors of the state duly affixed, completed and authenticated in compliance with the requirements of the Statutes.

"That said Petition does not contain the valid signatures of 14,696 qualified electors of the state who signed said Petition and who completed their signatures by adding their place of residence, their business, and their post office address, and the date of signing, and who signed the same in the presence of the persons verifying the said Petition as the circulator thereof, and who were known by the persons so verifying said Petition to be qualified electors of the counties referred to in the verifying affidavits, and with whom the purported circulators were acquainted, and who signed the same with knowledge of the contents of the Petition, or whose names were procured by circulators who received no compensation therefor.

"That said Petition contains purported signatures that are incomplete, as follows:

"(a) That 22,377 of the persons whose names appear upon said Petition did not add to their signatures, their place of residence.

"(b) That 237 of the persons whose names appear upon said Petition did not add to their signatures, their business.

"(c) That 7,244 of the persons whose names appear upon said Petition did not add to their signatures, their post office addresses.

"(d) That 444 of the persons whose names appear on said Petition did not add to their signatures, the date of signing.

"That affiant is informed and believes and therefore alleges that more than 20,000 of the purported signatures upon said Petition are invalid upon the following grounds:

"(a) That 19,178 of the names appearing on said Petition are contained in sections of said Petition that have been materially altered and forged after the signing thereof by the purported petitioners.

"(b) That 2,305 of the names appearing on said Petition are upon sections of said Petition containing the names of persons not residents of the counties in which they were circulated, and in which they are alleged in the verifying affidavits to be residents, and that said sections are invalid.

"(c) That 10 of the names in said Petition are upon a sheet or section that has been changed or altered by pasting the same to a heading.

"(d) That more than 4,000 names upon said Petition are upon sections thereof that were circulated by persons who received compensation for circulating the same.

"(e) That 10 names upon said Petition are duplications.

"(f) That certain sections of said Petition contain the names of persons who did not sign the same in the presence of the persons making the affidavits as circulators, and who were not known by the persons making such affidavits to have signed the same; that certain sections of said Petition contain the names of persons with whom the circulators were not acquainted and who were not known to them to be electors of the state and of the counties designated in the affidavits; that certain sections contain the names of persons not residents of the counties designated in the affidavits; that certain sections of said Petition contain the names of persons who did not know the contents of said Petition; that certain sections of said Petition have verifying affidavits appended thereto that were not signed and sworn to in the presence of the Notaries or other officers before whom the same purport to have been signed and sworn to; that the verifying affidavits attached to all of said sections of said Petition are false and are unlawfully appended thereto, and that all of the names embraced in all of said sections of said Petition are invalid and wrongfully embraced

therein. That the sections of said Petition so falsely verified contain more than 16,000 names.

"That by reason of the foregoing facts, more than 20,000 of the purported signatures upon said Petition are invalid and unlawfully embraced therein, and said Petition is void as to such purported signatures. That said Petition does not contain the requisite number of valid signatures, and is wholly insufficient as a petition to refer said law to the vote of the people."

In the petition involved in this case thousands of the signers failed to give their residence or their post office address, by the omission of the name of the state or the initial letters of the name of the state. The term "post office address" means the name of the person addressed, the name of the city or town in which the person is to receive such letter, and the state in which said city or town is located. The statute specifically says that each signer shall insert his residence and post office address. In the body of the petition involved in this case is this clause: "We, the undersigned, qualified electors of the State of South Dakota," and the majority of the court holds that this declaration made by the author of the petition is of itself sufficient to establish the residence and post office address of every signer on the petition. With this proposition I am not able to agree. The statute says that the signer must insert his residence and post office address, and we have repeatedly held that the signer must do this with his own hand. The above holding by the court in this case amounts to a judicial repeal of this provision of the statute. But this is not the worst result of this "about face" by the court. The law was well established when this suit was commenced. We know that before the commencement of this case, counsel for plaintiff examined these petitions name by name, and, applying the law as it was then established by this court, and was then in force, found that said petition came far short of containing the number of legal signers required to constitute a legal petition. Had the rule of law now declared by the majority of this court been known or in existence at that time, it is not at all likely that this action would ever have been commenced. Counsel have expended something like a year of hard work in the preparation and trial of these cases; it has probably cost the litigants in these actions not less than Twenty-five Thousand Dollars. All this now goes for naught simply be-

cause the majority of the court has seen fit to change the law after the suit was started.

The petition involved in this case is far from sufficient to invoke the referendum, and the writ of prohibition ought to be granted as prayed for in the complaint.