STATE ex rel. HELGERSON, Respondent, v. RIIFF, Secretary of State, et al., Appellants

(44 N. W.2d 126)

(File No. 9190. Opinion filed October 3, 1950)

Rehearing denied October 9, 1950

**Lund & McCann,** Brookings,**Royhl & Benson,** Huron, for Appellants.

**Holton Davenport,** Sioux Falls, **J. W. Kaye,** Mitchell, for Respondent.

ROBERTS, J.  This proceeding was instituted by a petition filed in the circuit court of Minnehaha County by Gust H. Helgerson for a writ of prohibition commanding the secretary of state, defendant, to desist and refrain from proceeding to submit Chapter 119, Laws 1949, to a vote of the electors at the next general election on the ground that, while the referendum petition filed with the secretary of state purports to be signed by the required number of electors, the number of valid signatures thereon is less than the required minimum of five per cent of the qualified electors of the state.  Defendant answered alleging that it appears from the face of the referendum petition duly filed in her office that it contains the required number of signers.  The State Benevolent Society of Brookings, The Northwest Life Association, The State Accident Association, Black Hills Benefit Life Association, and Life Benefit, Inc., sponsors of the referendum petition were by order of the trial court permitted to intervene.  Intervenors filed an answer denying the allegations of invalidity and upon issues so joined, trial was had upon the merits.  The circuit court entered findings generally in favor of plaintiff.  Intervenors appeal from the judgment restraining submission of the measure.

The record is voluminous, consisting of over thirteen hundred pages including the depositions of fifty-six witnesses.  Accompanying this record is the original petition purporting to contain 18,224 signatures.  It appears that the total number of votes cast for Governor at the general election in 1948 was 245,372.  The number of genuine signatures necessary to refer a measure based upon this vote is 12,269.  The petition purportedly contains 5,955 more signatures than required to refer a measure based upon this vote.  The

petition is made up of 1,565 sheets or sections, each having the requisite heading, and numbered consecutively by the secretary of state. There is printed at the bottom of each section an affidavit in the form prescribed by statute. Each section contains lines for signatures and space for each signer to indicate "Place of Residence (Township or Street Address)", "Business", "Post Office Address" and "Date of Signing".

The right of the people to vote upon a measure enacted by the legislature is expressly reserved to them by Section 1 of Article III of the State Constitution. It is therein provided that the legislative power shall be vested in the legislature, but the people reserve "the right to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect". This section further provides "that not more than five per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum. * * * The legislature shall make suitable provisions for carrying into effect the provisions of this section."

It has been held by this court that the constitutional provisions relating to the referendum are not self-executing. They did not become operative until the enactment of legislation. State ex rel. Richards v. Burkhart, 44 S.D. 285, 183 N.W. 870.

At its session after the adoption of the amendment of said section at the general election in 1898 to include the initiative and referendum, the legislature enacted a statute to carry into effect and to facilitate the operation of such amendatory provisions. Chap. 93, Laws 1899, SDC 55.04. There is the specific requirement that a petition "must be signed in person by the petitioners". SDC 55.0403. A signer must be a qualified elector to entitle him to sign a petition. SDC 55.0404. We are here principally concerned with the provisions of SDC 55.0405. This section provides that every person who circulates and secures signatures to a petition must "make and attach to the petition an affidavit" in the form prescribed therein "which he shall subscribe and swear to before some officer qualified to administer

oaths and having an official seal". The requirements of the affidavit are in outline as follows: (a) that the affiant is "qualified voter of the state of South Dakota"; (b) that he is "acquainted with all the persons whose names are affixed" to the part of the petition circulated by him; (c) that he knows "that each one of said persons signed said paper personally and added thereto his place of residence, his business, his post office address and date of signing"; (d) that he knows that "each and all of said persons are residents and qualified electors of the county of_____, state of South Dakota"; (e) that affiant knows that each person signed the petition "with full knowledge of its contents"; and (f) that affiant received no compensation for his services.

■ Before discussing the questions involving the validity of the petition, consideration will be given to the contention of intervenors that the trial court was without jurisdiction to enjoin the secretary of state from certifying the measure and causing it to be printed on the official ballot. State ex rel Evans v. Riiff, 73 S.D. 348, 42 N.W.2d 887, relied on by intervenors, is not here controlling. In that case plaintiff asserted that the secretary of state had not complied with certain statutory requirements in certifying to the legislature a proposed initiative measure. It was there held that, since the legislature in the exercise of its constitutional power had enacted and submitted to the electors the proposed measure, there was no jurisdiction in the judicial branch of the government to interfere with such legislative action. There is a substantial distinction between the initiative and referendum processes. An initiative measure must be submitted to the legislature for action thereon. As to a referendum, the whole matter is administered by officers charged with duties as to the form and manner in which a measure shall be referred to the people and as pointed out in the case cited the secretary of state may be enjoined from certifying a measure where the petition is insufficient.

The substantive question before the trial court was whether the petition was signed by the requisite number of qualified electors of the state in the form and manner provided by statute. The court found in substance that the

petition contains 7,948 invalid signatures and this leaves substantially less valid signatures than the 12,269 required to refer a measure. The findings divide the invalid signatures into a number of different classes. Findings of fact fifteen and sixteen, involving 5,469 signatures, are to the effect that the sections in which these signatures appear must be eliminated because the affidavits attached are fraudulent for wilful falsity of statement; that in each of the sections one or more signatures were written by someone other than the purported signer or that each signer did not personally insert the data as to residence, business, post office address, and date of signing; and that the falsity has not in any instance been explained or excused. In the 136 sections referred to in finding of fact seventeen, the court found that either from the face of the section of the petition wherein there is a falsity of statement in the affidavit or from evidence aliunde the petition there is explanation of the falsity which is consistent with good faith on the part of the circulator. This the court concluded was sufficient to disprove an intent to deceive and sustained intervenors in their contention that the affidavits are valid. The other findings include such classes as incomplete verification, duplication of signatures, ditto marks in the date column and similar defects.

This brings us to a consideration of findings of fact fifteen and sixteen, attacked by intervenors on the ground that there is no evidence of intentional fraud or guilty knowledge on the part of the circulators in permitting spurious signatures and the insertion of data by a hand other than that of the signer. The statute as we have indicated requires that the name of a petitioner be affixed to a petition and the information inserted by himself and no one else. O'Brien v. Pyle, 51 S.D. 385, 214 N.W. 623. The statute also provides that each part or section of a petition shall be verified, and without an affidavit a section has no validity. A fraudulent affidavit having no probative value is equally fatal. Morford v. Pyle, 53 S.D. 356, 220 N.W. 907; State ex rel. Jensen v. Wells, 66 S.D. 236, 281 N.W. 99, 103. This court in the Wells case said: "Clearly mere falsity of the affidavit does not establish that it is fraudulent; there

must be scienter or knowledge. If the affiant has some reasonable ground upon which to believe in the truth of the statement contained in the affidavit, we do not believe the affidavit should be said to have been made fraudulently. It must also appear that there was an intent to deceive. The intent to deceive is the essential element of fraud."

The proof in that case established that in certain instances affidavits were not knowingly or intentionally false. It was there said: "In a number of the sections of the petition it clearly appears upon the face of the petition that the person who signed did not complete the line by adding the information required by the statute. In most of these cases the person testified that he was incapable of writing anything but his signature which clearly appeared from the manner in which the signature was written, and that he authorized someone else, generally someone of his family, to fill in the remaining part of the line. The circulator in many instances said he believed this proper, and that it was done in good faith."

■ ■ This court again had this question before it in a case also entitled State ex rel. Jensen v. Wells, 66 S.D. 269, 281 N.W. 357, 359. It recognizes that intent to deceive is not ordinarily susceptible of direct proof and in the absence of evidence to the contrary may be presumed where the falsity was necessarily known to the affiant. The effect of such presumption is to cast upon the party seeking to sustain the validity of a petition the burden of producing evidence to show that affiant acted in good faith. This court said: "After a careful examination of alleged irregularities in the petition and consideration of the evidence we are convinced that in numerous instances the signer did not write in his own handwriting his residence or other information required by statute. We also find that two or more names in a section of the petition or data in two or more lines have been written by one person. * * * Circumstances referred to in State ex rel. Jensen v. Wells, supra, do not appear. We there stated that where there were immaterial alterations or where a name or data was written at the request of a person incapable of writing in such a manner that it appears that there was no intent to deceive, though the

signature could not be counted, the verification was not fraudulent; that there is an absence of intentional fraud or guilty knowledge on the part of the circulator where such circumstances appear. There are 3,959 signers appearing in the sections above listed and these are not entitled to be counted."

Evidence in behalf of the plaintiff included the testimony of a handwriting expert and a report of his examination and analysis of the referendum petition. Plaintiff furnished defendant and intervenors with a copy of the report and pursuant to the provisions of SDC 36.1002 gave notice of his intention to offer the same in evidence. The witness touching his qualifications testified that so far as concerns typewriting he became an examiner of questioned documents about twenty years ago; that this eventually led to work in determining the authenticity of handwriting or the lack thereof; and that during the past six or seven years he has fifty or more times testified in state and federal courts as an expert on handwriting.

■ ■ "A witness is an expert witness and is qualified to give expert testimony if the judge finds that to perceive, know or understand the matter concerning which the witness is to testify, requires special knowledge, skill, experience or training and that the witness has the requisite special knowledge, skill, experience or training." Restatement Model Code of Evidence, § 402; Bratt v. Western Air Lines, Inc., 10 Cir., 155 F.2d 850, 166 A.L.R. 1061. The qualifications and competency of a witness to give opinion evidence is primarily in the discretion of the trial court and his ruling in determining qualifications will not be disturbed unless there is no evidence that the witness had the qualifications of an expert or the trial court has proceeded upon erroneous legal standards. 20 Am.Jur., Evidence, § 786.

■ It is argued that the handwriting expert was discredited and that his testimony "appears to be wholly unreliable." Though the testimony of this witness was in certain particulars contradicted by testimony produced by intervenors, this did not deprive the trial court of its right and function to pass on the credibility of the witness and the

weight of the testimony. It may be observed that some of these witnesses were evasive and without definite recollection as to facts bearing upon the validity of the affidavits attached to sections circulated by them. Intervenors place much emphasis upon what was said by this court in State ex rel. Jensen v. Wells, 66 S.D. 269, 281 N.W. 357, to the effect that we cautiously considered and weighed the testimony of the handwriting experts. That was an original proceeding wherein this court was the trier of fact. In a case tried in the circuit court and brought to this court on appeal, this court does not try the case de novo. In other words, it is not the province of this court on appeal to weigh the evidence. We are of the opinion that the questioned findings fifteen and sixteen should not be disturbed. It has long been the rule in this court that the findings below will not be overturned unless we can say from the record that the evidence preponderates against them.

■ ■ The trial court found that the affidavits of circulators in each of thirteen sections were defective because the certifying officer either had no official seal or omitted to affix it and concluded that the 174 signatures in such sections could not be counted. The affixing of the official seal by the certifying officer is essential under the statute to the validity of an affidavit. State ex rel. Jensen v. Wells, 66 S.D. 269, 281 N.W. 357. The omission of seals was not obviated by proof before the court below that a number of persons before whom affidavits purported to have been made were duly commissioned notaries public.

■ The court found that the space following the words "county of" in the affidavit attached to each of twenty five sections is blank. The statutory requirement that the circulator specify the county wherein the persons signing are residents and qualified electors must be substantially followed and obviously the names of 288 signers appearing in such sections of the petition were properly stricken by the court below.

■ The court found that 258 signers did not affix after their signatures the required statutory data as to residence, post office address, business and date of signing; that one or

more spaces for such data were left blank. This finding was justified by the evidence and the signatures were properly rejected.

Numerous other findings of fact are challenged and discussed in the briefs of counsel, but need not be considered. From the findings sustained, it appears that the petition was not signed by the requisite number of qualified electors in the form and manner provided by statute.

The judgment is affirmed.

All the Judges concur.