Paul J. BJORNSON, and Aberdeen Motor Hotels, Inc., a South Dakota Corporation, Plaintiffs and Appellees,

v.

The CITY OF ABERDEEN, a Municipal Corporation; Jeff Solem, Mayor of the City of Aberdeen and a member of the City Commission of the City of Aberdeen; Henry Lussem, Dean Driscoll, Robert Nikolas, and Allen Gates, each Members of the City Commission of the City of Aberdeen; and Winifred Kraft, City Auditor of the City of Aberdeen, Defendants,

and

James G. Shavie, Intervenor and Appellant.

No. 12804.

Supreme Court of South Dakota.

Argued March 17, 1980.

Decided Sept. 17, 1980.

Julie Johnson of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for plaintiffs and appellees; Dennis Maloney of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, on the brief.

William J. Srstka, Jr. of Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, for intervenor and appellant.

MORGAN, Justice.

This appeal stems from the trial court's grant of a peremptory writ of prohibition against the conduct of a special election, called in response to the filing of certain municipal referendum petitions which sought to refer to a vote of the people of Aberdeen a duly adopted ordinance, which, under SDCL 9–54, authorized issuance of industrial revenue bonds in the amount of $2,800,000 to provide for the construction of a Ramada Inn Motel and convention center in the city. We affirm in part, reverse in part, and remand for further proceedings.

Fifty–two referendum petitions containing 790 signatures were filed in the Aberdeen City Auditor's Office. Only 510 valid signatures were needed for the petitions to comply with SDCL 9–20–8. Appellees challenged the petitions on the basis of their invalidity as appeared on their face. The

Aberdeen City Commission, however, rejected the challenge and set December 5, 1978, as the special election date, whereupon the prohibition action was commenced.

The trial court issued an alternative writ of prohibition on November 15, 1978. This alternative writ halted the special election until further order of the court. Shavie, innkeeper of the Aberdeen Holiday Inn, moved to intervene. The evidence shows that he was the instigator and dominant force in the petition drive. After hearing testimony and arguments on the motion, the trial court granted the motion to intervene. From that point on, the lawsuit was a contest between appellees and appellant. Neither the city nor its officials appealed.

Appellees sought to halt the special election, claiming that many of the signatures on the petitions were not valid. Allowance of these claimed invalidities would result in a number of signatures far less than the 510 required. The trial court appointed a referee to act for the court in making findings of fact on questions of voter registration and address problems which the petitions themselves posed. After a hearing, the referee issued findings of fact.

Further testimony was taken after which the trial court adopted the referee's findings of fact, entered its own findings of facts and conclusions of law, and granted a peremptory writ of prohibition barring any further proceedings in connection with the special referendum election called for by the petitions, which were before the court at that time.

During the proceedings below, 117 signatures were withdrawn by agreement between the parties, leaving 673 signatures on the petitions. The trial court disallowed another 390, leaving only 283 valid signatures remaining on the petitions, far short of the required 510. On appeal appellant concedes 25 of the disallowed signatures, leaving 365 at issue which fall into four categories: (1) 286 signatures where the date or address of the signatory was added

by the circulator; (2) 64 signatures of unregistered voters; (3) 13 signatures of persons who lived at different addresses from the ones at which they were registered to vote; and (4) 2 signatures of women who had signed using their husbands' names with "Mrs."

All of the issues concerning the petitions on this appeal center around the signatures and the required supplementary information. We do not have issues of authentication, verification, or ghost–circulator as we did in *Nist v. Herseth*, 270 N.W.2d 565 (S.D.1978). Nor is there any dispute regarding the facts as they were ultimately found by the trial court.

The principal issue affecting the greatest number of signatures is category (1) which involves the apparent conflict between the statutorily mandated procedure for signing, and the procedure outlined in the petitions drawn substantially in conformity with ARSD 5:02:08:16 prescribed by the State Board of Elections under authority of SDCL 12–1–9. The disparity lies in the provision for adding the signer's residence address and the date of signing. The statute, SDCL 9–20–8,[1] clearly requires that "each elector shall add to his signature his place of residence, including his street and house number, if any, and date of signing," whereas the form promulgated and adopted by the State Board of Elections states in the instructions on the face thereof: "2. Each signer *or circulator* must add the mailing address of the signer's residence and the date of signing." (Emphasis added.)

Appellant urges that the trial court erred in declaring invalid the 286 signatures where the evidence admittedly shows that the additions, consisting of dates, addresses, or both, were made by the circulators of the petitions and not by the signatories to the petitions.

There are two aspects to this issue. First of all: As a general principle, when there is a conflict between a statutory election re-

1. Our review does not consider the amendment, 1979 S.D.Sess.Laws ch. 50, § 7, which   authorizes the circulator to make the addition.

quirement and a duly adopted rule requirement, which prevails? Secondly, assuming the answer is the statutory provision, does a failure in strict compliance invalidate the signature?

That the legislature is the constitutional font of authority for referendum procedures requires no citation other than the constitutional authority: "The Legislature shall make suitable provisions for carrying into effect the provisions of this section." S.D.Const. art. III, § 1.

■ The legislature has authority to delegate powers to administrative agencies where the legislature sufficiently prescribes the standards or rules for the guidance of the agency. Authority may be delegated to the agency to exercise the administrative power of regulation and control. *State, Div. of Human Rights v. Prudential Ins.*, 273 N.W.2d 111 (S.D.1978).

In this case the legislative authority delegated to the Board of Elections was clear. SDCL 12–1–9, in pertinent part, provides authority to "exercise the rule–making power previously granted to the secretary of state . . . and to otherwise prescribe forms where such are not made mandatory by law . . . ." SDCL 12–1–10 authorizes: "The board of elections shall report to and make recommendations to the Legislature concerning desirable or necessary changes in the election laws of this state."

■ Thus, we can see that in adopting ARSD 5:02:08:16, the Board of Elections exceeded its authority by prescribing a form different from that which was made mandatory by SDCL 9–20–8. The Board has no authority to amend the statute by rule. Rather, its authority in such regard is restricted to merely reporting to and recommending to the legislature desirable or necessary changes.

■ We then look at the second aspect. Does a failure of strict compliance with the statutory provisions invalidate the signatures? Generally, "[r]equirements for circulation and verification of referendum petitions, whether statutory or administra-

tively adopted, are substantial in character and not merely requirements of form. . . . These requirements must, therefore, have been substantially complied with in order to render the petition valid." *Corbly v. City of Colton*, 278 N.W.2d 459, 461 (S.D.1979).

As to the specific statutory requirements of petition signatories, SDCL 9–20–8, in part, provides: "[E]ach elector shall add to his signature his place of residence, including his street and house number, if any, and date of signing." Generally speaking, the decisions of this court on the question of compliance with these statutory requirements have followed the hard line.

> [T]he signer did not write in his own handwriting, his residence . . . post office address, and date of signing, or some of them. . . . Of course such signatures cannot be counted because the law requires the signer to do the whole job himself. . . . No one is authorized by law to doctor up a sick petition.

*O'Brien v. Pyle*, 51 S.D. 385, 392–393, 214 N.W. 623, 626 (1927) (citations omitted).

> These various acts, viz., signing the petition, inserting the signer's residence, . . . his post office address, the date of signing, . . . are all placed on the same footing by the Legislature; so that the insertion of these data by the signer . . . are just as important and as much required by the law as the names of the signers themselves. The permission contained in section 5073 to indicate the place of residence . . . and post office address by ditto marks is a concession to the petitioner, but does not excuse him from inserting the ditto marks himself, and does not purport to excuse him from himself writing in the date of signing the petition. These separate requirements of the statute are not difficult of understanding nor arduous to perform.

*Morford v. Pyle*, 53 S.D. 356, 359, 220 N.W. 907, 909 (1928).

*State v. Riiff*, 73 S.D. 467, 473, 44 N.W.2d 126, 129 (1950), reaffirmed *O'Brien v. Pyle,* supra, saying that the statute "requires that the name of a petitioner be affixed to

a petition and the information inserted by himself and no one else."

From 1889 to 1957 the signer was required to append to his signature his occupation, residence, and post office address. In 1919 the date of signing was added. In 1957 the addendum was changed to its present form which struck from the information the signer's occupation and spelled out in more detail the requirement for residential address. These requirements are neither more difficult to understand nor more arduous to perform than those required when the above decisions were handed down.

█ Appellant suggests that in the light of SDCL 9–20–10, which reads, "Such petition may be made up and signed and shall be liberally construed as provided by the statute governing an initiated law," we should adopt a more liberal interpretation. We note, however, that similar statutes with respect to initiative and referendum generally, have been on the books since 1907.[2] Previous courts, in arriving at the decisions noted above, have been under the same constraints, but as this court said in *O'Brien*, 51 S.D. at 393, 214 N.W. at 626: "While it is true that section 5073, supra, requires that referendum petitions shall be liberally construed so that the real intention of the petitioners may not be defeated by a mere technicality, yet it was not meant thereby that substantial compliance with the law can be ignored."

█ The trial court disallowed those signatures to which "Aberdeen," "South Dakota," or both, including abbreviations thereof, had been added. This court has previously held that either "South Dakota" or an abbreviation thereof need not be added to a signature on a state–wide referendum petition.

Plaintiff first contends that, if the signer failed to write either South Dako-

ta or the abbreviation therefor in the residence or business column, the signature should not be counted. We cannot agree. By signing the petition the signer represents that he is a "qualified elector of the State of South Dakota." As disclosed by the body of the petition above set out, the first sentence therein states: "We, the undersigned, qualified electors of the State of South Dakota." *State v. Wells*, 66 S.D. 236, 247, 281 N.W. 99, 105 (1938). We are bound by that decision and therefore hold that the failure of the signatories in the instant case to add "South Dakota" or any abbreviation thereof is not fatal so as to disqualify their signatures. It necessarily follows that the fact someone else made such an addition to the petition is not fatal so as to invalidate the signature. In this respect we reverse the decision of the trial court.

█ As to the addition of "Aberdeen" it is a perfectly logical extension of *Wells*, supra, to say that on a municipal referendum petition beginning "WE THE UNDERSIGNED, duly qualified electors of the municipality of Aberdeen, the State of South Dakota . . . ," the failure to add "Aberdeen" to the place of residence is likewise not fatal. Since the failure of a signatory to add "Aberdeen" or any abbreviation thereof to his signature on the petition is not fatal so as to disqualify his signature, it makes no difference to the validity of the signature if the addition was made by someone other than the signatory himself. In this respect we also reverse the decision of the trial court.

█ We next consider the significance of addition of the date by the circulator. The previous decisions of this court have held that the date must be included in the addendum. Without the date of the signing the signature is invalid. *Nist v. Herseth*, supra; *Shields v. Wells*, 65 S.D. 552, 276

---

**2.** 1907 S.D.Sess.Laws ch. 166 provided, in pertinent part:

The petitions herein provided for shall be liberally construed so that the real intention of

the petitioners may not be defeated by mere technicality.

N.W. 246 (1937); *Morford v. Pyle*, supra. As pointed out earlier, statute and caselaw require that this be done by the signer. Whether the month is indicated by name, abbreviation, or number is immaterial. *State v. Wells*, supra. We affirm the decision of the trial court that the date must be added by the signer; however, we hold that, where the numerical designation for the month was used, the signature is not rendered invalid in any instances where the circulator later wrote the name of or abbreviation for the month over the number.

We next consider category (2) involving the issue of voter registration. May an unregistered voter validly sign a referendum petition? The trial court invalidated 64 signatures where the signatories were admittedly not registered to vote.

The South Dakota Constitution art. III, § 1, in pertinent part, reads:

[T]he *people* expressly reserve to themselves . . . the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the *electors* of the state before going into effect, . . . provided, that not more than five per centum of the *qualified electors* of the state shall be required to invoke . . . the referendum. (Emphasis added.)

The general referendum statute, SDCL 2–1–3, provides that the referendum "petition shall be signed by not less than five percent of the *qualified electors* of the state," but with respect to the municipal referendum, SDCL 9–20–8 requires that the petition "be signed by at least five per cent of the *legal voters* residing in the municipality." (Emphasis added.) Although the form petition, ARSD 5:02:08:16, uses the term "duly qualified voters," the petitions circulated herein refer to "duly qualified electors."

Appellant urges that the trial court erred by confusing "voters" with "electors" in disqualifying the 64 signatures of persons not registered to vote in the municipality. SDCL 12–1–3(7) defines "elector" as "a person qualified to register as a voter, whether or not he is registered." SDCL 12–1–3(10) defines "voter" as "a person duly registered to vote or one who is performing the act of voting." These definitions were added to the general election laws by enactment of the 1973 legislature.[3]

The constitution, of course, is the authoritative law. Article VII, § 1 of our state constitution, as it was couched in 1897 when the referendum amendment was adopted, provided:

Every male person resident of this state who shall be of the age of twenty–one years or upwards, not otherwise disqualified . . . either . . . a qualified elector under the laws of the Territory of Dakota . . . or who shall have resided in the United States one year, in the state six months, in the county thirty days, and in the election precinct where he offers his vote ten days next preceding any election, shall be deemed. a *qualified elector at such election.* (Emphasis added.)

This court in *Carr v. Wakonda Ind. Cons. Sch. Dist. No. 1 of Clay County et al.,* 45 S.D. 261, 186 N.W. 880 (1922), pointed out that the above constitutional provision, S.D. Const. art. VII, § 1 (1889, initially amended 1918), only purports to define the qualifications of those electors *who offer their vote at an election,* but pointed out that in the election code those persons who possess the qualifications prescribed in the constitution and who have complied with the registration provisions were entitled to vote, thereby defining who are electors. The court in *Carr* stated that "a qualified elector was a person who was entitled to vote, regardless of the fact of whether or not he (or she) voted." 45 S.D. at 263, 186 N.W. at 880.

What effect does registration have? It affords an early and orderly identification of persons who are qualified. Maintenance

3. 1973 S.D.Sess.Laws ch. 67.

of registration lists under present election laws makes registration a continuing thing until one's name is removed as provided by statute. Moving from the precinct or even from the state does not automatically disqualify one as it once did,[4] but no one contends that an elector, otherwise qualified, would be able to vote had he not met the registration requirement. Does it not follow then that in order to be a "qualified elector" to sign a petition as denominated in S.D.Const. art. III, § 1, one has to be qualified to vote by registration as well as by age, residence, et cetera? SDCL 12–1–3(7) defines only "electors" without any reference to "qualified."

There is a split of authority among the courts of other states who have considered the issue. We are persuaded to follow the more restrictive view. And, should it not be so? We are considering a constitutional right retained by the people from the legislature. It should be jealously guarded from abuse from all quarters. Five percent of the responsible electors who have exercised the right of registration to vote is not an undue burden on those who wish to petition,[5] including those who attain the age of eighteen years even shortly after a general election, since they may register at any time and need not wait until the next primary or general election to do so. To suggest that the petitioners should include electors who would not be qualified to vote for or against a proposal in the regular course of events makes room for abuse. The motives of a faction seeking to employ the referendum process may be and often are purely self–serving, as in this case. The constitutional exception [6] of some measures

from the process strongly shows the intent that the legislative process is not entirely susceptible to review by the electors, and the requirement for a minimum number of petitioners likewise indicates the intent that the matter be significant enough to arouse the interest of at least that minimal number of qualified electors.

We hold, therefore, that in order to be a "qualified elector" as denominated in S.D.Const. art. III, § 1, the signer must be an elector who has registered to vote in some precinct within the municipality, and that any apparent conflict between the terms "elector" as used in the constitution and "voter" as used in SDCL 9–20–8 is only a matter of semantics.

We turn then to the issue in category (3): Whether the trial court erred in invalidating 13 signatures where the signer's place of residence varied from the residence shown on his voter registration. As we have just pointed out, the purpose for registration is for identification. *State v. Wells*, supra. At the time of the voter's registration he established his residence within the precinct or ward and again, as previously noted, this registration and the right to vote in that precinct or ward can continue under the present constitutional provision [7] even though the registrant has moved from the precinct or ward, or even from the state. If the legislature had wanted the addendum to show registered voting residence it could have simply amended the statute when the constitution was changed. The statutory requirement set out in SDCL 9–20–8 clearly says "place of residence." That is the present location

---

**4.** S.D.Const. art. VII, § 2, provides, in pertinent part:

> Each elector who qualified to vote within a precinct shall be entitled to vote in that precinct until he establishes another voting residence. An elector shall never lose his residency for voting solely by reason of his absence from the state.

**5.** The Brown County Auditor testified that there were 22,000 registered voters in Aberdeen.

**6.** "[E]xcept such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions . . ." S.D.Const. art. III, § 1.

**7.** See footnote 4, supra.

where the signer can be contacted to check his qualifications and that is the generally accepted purpose for registration. See *State v. Wells,* supra. We hold, therefore, that the trial court did err in invalidating those signatures absent any showing that the move resulted in the purging of the signer's name from the registration listed under the previous residence.

Examining appellant's contention under category (4), the trial court allegedly erred in invalidating two signatures where the signatory used "Mrs." and her husband's full name, e. g., "Mrs. John Q. Public." The record reflects that there were seven such signatures, of which five were allowed by the trial court. The reason for the invalidity of the two obviously was something other than the mode of signing, but appellant having failed to adequately specify the error, brief and argue it, any such error is deemed waived.

In summation, we have affirmed the trial court in part and reversed in part on the issues in category (1), the addition of "Aberdeen" or "South Dakota" or the "date of signing" or any combination thereof, and we affirm the trial court with respect to the issue in category (2), the requirement for voter registration, while reversing the trial court on the issue in category (3), the difference between residence address and voter registration address. Because the record does not adequately distinguish between the invalidated signatures for one or more of the items of addenda considered under category (1), we are unable to arrive at a final figure. We therefore remand the matter to the trial court as the trier of fact for further proceedings in isolating the types of additions, for determination of the validity of the signatures, and for final determination of the number of valid signatures on the petitions in conformity with this opinion.

WOLLMAN, C. J., and DUNN, J., concur.

HENDERSON and FOSHEIM, JJ., concur in part and dissent in part.

HENDERSON, Justice (concurring in part, dissenting in part).

I do not agree with the majority decision that a "qualified elector" must be a citizen who has registered to vote.

The preamble to the referendum petition herein involved states: "WE THE UNDERSIGNED, duly qualified electors of the municipality of Aberdeen  .  .  ." SDCL 12–1–3(7) defines "elector" as "a person qualified to register as a voter, whether or not he is registered." Registration is not a prerequisite to being a qualified elector. The circuit court confused "elector" with "voter." A voter is defined by SDCL 12–1–3(10) as: " 'Voter,' a person duly registered to vote or one who is performing the act of voting."

The majority decision cites the South Dakota Constitution, Article III, § 1, as authority for requiring a citizen to register to vote before he can legally lend his signature to a referendum petition. Article III, § 1 provides:

> The legislative power of the state shall be vested in a Legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the Legislature shall enact and submit to a vote of the *electors* of the state, and also the right to require that any laws which the Legislature may have enacted shall be submitted to a vote of the *electors* of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions:  provided, that not more than five per centum of the *qualified electors* of the state shall be required to invoke either the initiative or the referendum.  (Emphasis supplied.)

Such an authoritative interpretation of the Constitution is too great a strain on the language to render the majority opinion persuasive.  Notwithstanding any legislative act, our Constitution is controlling.

I believe there is a vast difference between signing a referendum petition and voting on the issue itself. No laws, ordinances, or legal policy has ever been effected by the signature of an individual on a referendum petition. A vote by the entire affected electorate is required before any legal changes can occur which have their genesis in a referendum petition. A referendum petition, if and when it contains the prerequisite amount of signatures, merely allows a proposal to be voted upon. Since referendum petitions themselves cannot be voted into law, I believe a strict construction of our state Constitution's definition of "qualified electors" is necessary. In requiring registration prior to signing a referendum petition, the majority opinion will preclude interested individuals from effectively asserting their grievances and potentially presenting their concerns before a vote of the general public. Such a preclusion lacks clear and persuasive authority and is contrary to our system of governmental democracy.

I am authorized to state Justice FOSHEIM joins in this concurrence in part and dissent in part.