MORFORD, Appellant, v. PYLE, Secretary of State, Respondent.

(220 N. W. 907.)

(File No. 6700. Opinion filed August 10, 1928.)

See, also, 215 N. W. 690.

*Martens & Goldsmith,* of Pierre, for Appellant.

*Buell F. Jones,* Attorney General, *Benj. B. Mintener,* Assistant Attorney General, *A. C. Miller,* of Kennebec, and *Fuller & Robinson,* of Pierre, for Respondent.

POLLEY, J.  For a number of years last past the unorganized county of Todd has been attached to Lyman county for state and judicial purposes.  At the 1927 session of the Legislature, an act known as House Bill No. 69, now chapter 217 of the Session Laws of 1927, was passed, which in effect attached Todd county to Tripp county, instead of Lyman county, for state and judicial purposes.  The defendant in this action is the secretary of state.  The plaintiff is a freeholder and an elector of Todd county.

On the 31st day of May, 1927, there was filed in the office of the secretary of state a referendum petition, which purported to

be signed by 11,900 qualified voters of the state, asking that said chapter 217 be referred to the electors of the state at the next general election. The number of petitioners necessary to invoke the referendum was 9,192. The petition as filed contained 11,900 names, a surplus of 2,708 more than the required number; but it is alleged by plaintiff that, because of certain irregularities and defects in said petition, the same is insufficient to authorize defendant to submit said law to the voters of the state, and this action is brought for the purpose of enjoining the defendant from submitting said law to a vote.

The petition was circulated in sections by various persons in different parts of the state, and it is claimed by plaintiff that many of these sections of the petition were not signed or verified in the manner prescribed by law. Upon the trial the court found that the petition as filed with the defendant contained 1,486 names that, for one reason or another, should not be counted. This left a surplus of 1,222, and the court held the petition sufficient to invoke the referendum. Judgment dissolving the temporary restraining order that had been issued at the beginning of the action, and dismissing the action on its merits, was entered. From this judgment, plaintiff appeals.

Section 5073, Code 1919, provides that these petitions be liberally construed, so that the real intention of the petitioners may not be defeated by mere technicalities; but, in order to prevent fraud or corruption in securing such petitions, certain regulations in securing the signatures of the petitioners have been prescribed by the Legislature. Section 5067, Code 1919, provides that each petitioner shall add to his signature his place of residence, his business, his post office address, and the date of signing. These requirements are repeated in section 5069; but under the provisions of section 5073, Code 1919, the petitioner is permitted to indicate his residence, his business, and his post office address by ditto marks, if they are the same as those last written above his signature.

Section 5074 requires that every person who circulates and secures signatures to the petition shall, before filing the same, make and attach thereto an affidavit, which shall be sworn to by him before some officer qualified to administer oaths and who has an official seal. The form of this affidavit is prescribed by this section and is as follows:

"I, ————, being first duly and solemnly sworn, on my oath state: That I am a qualified voter of the state of South Dakota. That I am acquainted with all the persons whose names are affixed to the above and foregoing paper and know that each one of said persons signed said paper personally and added thereto his place of residence, his business, his post office address and date of signing. That each and all of said persons are residents and qualified electors of the county of ————, state of South Dakota. That each of said persons signed said petition with full knowledge of its contents. That I have received no compensation whatever or promise of compensation for my services in circulating said petition."

These various acts, viz., signing the petition, inserting the signer's residence, his business, his post office address, the date of signing, and the verification by the person who circulates the petition, are all placed on the same footing by the Legislature; so that the insertion of these data by the signer and the verification by the circulator are just as important and as much required by law as the names of the signers themselves. The permission contained in section 5073 to indicate the place of residence, business, and post office address by ditto marks is a concession to the petitioner, but does not excuse him from inserting the ditto marks himself, and does not purport to excuse him from himself writing in the date of signing the petition. These separate requirements of the statute are not difficult of understanding nor arduous to perform.

The names of the petitioners on the petition are numbered consecutively from the beginning to the end, and for the convenience of the court appellant has predicated his assignments upon the particular sections of the petition that were procured by the different persons who circulated the same.

It is the contention of appellant that a large number of the names attached to the various sections of the petition should be rejected. This contention is based upon the following grounds: (1) Some of the signatures are on petitions which do not contain the heading provided by law. (2) There are some signatures on petitions from which the heading has been removed. (3) That the persons who circulated some of the petitions were compensated for their services, contrary to law. (4) That in some instances there

is but one verification for several different petitions. (5) That in many instances the date of signing the petition is indicated by ditto marks. (6) That a number of the petitions were verified before a United States commissioner. (7) That on many petitions are names placed there by some one other than the person named. This latter objection involves 2,992 names, enough, if the objection is well taken, to more than overcome the surplus of 1,222 names as found by the court, and render it unnecessary to consider the other contentions made by appellant.

The trial court found that on a considerable number of the petitions were names placed there by some one other than the person named, and that the aggregate number of names on such petitions is 2,992. Appellant contends that these names should be rejected.

■ The affidavit required by section 5074 is for the purpose of establishing the genuineness of the signature on the petition. But, if the person who makes the affidavit is not a qualified voter of the state, or if he is not acquainted with all the persons whose names appear on the petition, or if each one of the persons whose names appear on the petition did not personally sign the same and add thereto his place of residence, his business, his post office address, and the date of signing, or if each person whose name appears on the petition is not a resident and qualified voter of the county named in the affidavit, and that each person who placed his name on the petition did so with knowledge of its contents, or if the person who signed the affidavit received any compensation or promise of compensation for his services in circulating the petition, then the affidavit is false—necessarily false—because the law requires him to have personal and actual knowledge of all the facts, and the petition is left without the required affidavit, for a false affidavit is no better than no affidavit at all.

As an example of the manner in which these petitions were handled, we quote from finding of fact No. 3. A petition was circulated by one John Heib:

"He personally presented the petition or section to some of the signers and procured their signatures; that a few other signatures were added to said petition while it was in a store and while it was in a bank, in both of which places it had been left by said Heib, and that he was unable to tell which signatures had been

affixed while he was circulating the petition or section, and while it had been left in the store or in the bank; that he was not personally acquainted with all of the signers, nor were all of the signatures attached to this petition or section signed in his presence."

Yet he signed the prescribed affidavit, and the trial court counted the names as a part of the signatures on the petition.

Another section of the petition was circulated by one Mc-Guigan. The court found:

"McGuigan resided on a ranch near Spearfish, South Dakota. That some of the signatures were attached to said petition or section while he had it in his possession at his farm. That he took the petition on one or two occasions to Spearfish and obtained signatures thereto. That his sister-in-law on one or two occasions also took the petition to Spearfish and had signatures attached thereto. That he was unable to designate which signatures had been affixed in his presence and which had been obtained by his sister-in-law. That he was not personally acquainted with all of the signers on this said petition or section, not knowing all of the signers who had affixed their signatures thereto at his sister-in-law's request."

Yet he signed the affidavit, and the trial court refused to deduct the names from the petition.

The respondent lays much stress upon the following finding by the trial court:

"No person willfully, fraudulently, or with intent to violate the law forged, mutilated, changed, or altered, or inserted anything in, any of the said several papers or petitions to which the signatures of the said 9,192 electors have attached their signatures, and that neither of said 9,192 electors was falsely or fraudulently induced to subscribe his name thereto."

██ ██ This may be true; but it applies to the signers only, and not to the persons who circulated the petitions. It is undoubtedly true that, on the petitions under consideration, there are the names of some 2,500 electors who signed their names to the petition in good faith and added to their names the data required by the statute; but the verification by the party who circulated the petition is as much an essential of a good and valid referendum petition as the names themselves, and where there is no verification, or the purported verification is false, which amounts to the

same thing, the petition cannot be counted. The person who circulates the petition is the agent of the petitioners, and they are bound by his acts. O'Brien v. Pyle, — S. D. —, 214 N. W. 623; State v. Graves, 90 Ohio St. 311, 107 N. E. 1018.

When a person circulates a referendum petition, it is his duty to see and personally know every person who signs it. Unless he does know them, and see them all sign, he cannot honestly say that he is acquainted with each signer, and that each of them signed it personally, and that each of them added to his signature his place of residence, his business, his post office address, and the date of signing; that each and all of the signers were residents and electors of his particular county, and that each signer had full knowledge of the contents of the petition when he signed it; and when a person, not knowing these facts, makes the affidavit above set out, such affidavit is false, and must be knowingly false, and all the names on such petition must be rejected. Barkley et al v. Pool, 193 Neb. 629, 173 N. W. 600; State ex rel v. Olcott, 62 Or. 277, 125 P. 303. To permit the petitions under discussion in this case to be counted would be to recede from the standard set by this court in O'Brien v. Pyle, supra.

Included in the petition on file in this case are 136 sections on which the petitioners and the various persons who circulated the sections have all complied with the law. This fact alone plainly demonstrates that the law can be understood and that its provisions can be complied with. It is our opinion that the 2,992 names appearing on sections of the petition to which false affidavits are attached should not be counted, and, with this number of names deducted from the petition, it comes far short of containing the requisite number of names, and it is not necessary to consider the other questions submitted for review by the appellants.

The judgment appealed from is reversed, and the trial court will be directed to issue a peremptory order restraining and enjoining the defendant from submitting said chapter 217 of the Laws of 1927 to the voters of the state at the coming general election.

MISER and MORIARTY, CC. (sitting in lieu of two disqualified Judges), concur.

SHERWOOD, J., concurs in result.

BURCH, P. J., and BROWN, J., disqualified and not sitting.

CAMPBELL, J., not sitting.