**Claude BAKER, Petitioner and Appellee,**

v.

**Robert JACKSON, Jr., Murdo City Auditor, Respondent and Appellant,**

and

**The Murdo City Council and James Hockenbary, Harriet Parish, Wayne S. Esmay, Carole Nash, Donald Hieb and Gene Beckwith, Constituting the Members of Said Council and Richard Bradley, as Mayor of the City of Murdo, Respondents.**

**No. 14576.**

Supreme Court of South Dakota.

Considered on Briefs, Nov. 29, 1984.

Decided July 31, 1985.

Dallas E. Brost of Brost & Brost, Presho, for petitioner and appellee.

James E. Carlon of Gors, Braun & Carlon, Pierre, for respondent and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal by the respondent Robert Jackson, Jr., the Auditor of the City of Murdo, from the issuance of a Writ of Mandamus directing him to call a referendum election. This referral concerns the

Murdo City Council's action of creating a second police officer's position and hiring Duane Lewis to fill this position. Upon advice of counsel, Jackson refused to call an election. We affirm the trial court's Writ directing a referendum election.

## FACTS

In early 1983, Murdo City officials compiled a city budget which included enough financing for the police department to pay two salaried police officers. The manner in which the police funds were to be spent or allocated, however, i.e., equipment, uniforms, or salaries, was not specified in the city budget. The budget was adopted, published, and became effective without a request for a referendum election.

At a Murdo City Council meeting on August 1, 1983, a recommendation was made to hire Duane Lewis as an additional police officer. The suggestion was unanimously passed. The minutes of this Council meeting, including the action to hire Lewis, were published in the *Murdo Coyote* on September 8, 1983, which, in pertinent part, read as follows:

> Mayor Bradley recommended Duane Lewis be hired effective August 1st, 1983, as a second police officer for the City of Murdo. Nash moved that Lewis be hired, Hockenbary seconded Nash's motion, and all members voted in favor.

On September 27, 1983, Claude Baker, petitioner/appellee herein, filed a Petition for Referendum Election in reference to the Council's action with Robert Jackson, Jr., Murdo City Auditor, respondent/appellant in this case. The Referendum Petition consisted of two sheets of paper stapled together. The first page contained the correct heading and was followed by correct signatures. The second page continued with correct signatures and ended with a properly completed verification statement. Jackson failed to call the election, however, on the grounds that the petition was insufficient. A Petition for Writ of Mandamus was then filed by Baker as the circulator of the Referendum Petition. Trial on the merits was held February 21, 1984, and the Mandamus issued April 17, 1984. The trial court specifically held that Baker's Refer-

endum Petition was valid and met the statutory requirements and that the hiring of the police officer was a resolution and thus subject to referral.

## HISTORICAL BACKGROUND

South Dakota was the first state in the Union which approved a constitutional amendment reserving legislative powers to its citizens. South Dakota Constitution Article III, § 1, adopted in 1898. Apparently, a basic reason behind its adoption was to act as an ostensible safety valve and remedy for whatever ills might evolve in representative government. Said amendment expressly provides: "This section shall apply to municipalities." The initiative and referendum process spread to nearly every state in the western one-half of the United States and as of 1982, twenty-three states had adopted some form of an initiative or referendum process on a statewide basis. This legislative prerogative, in South Dakota, has been extended to counties by virtue of SDCL ch. 7–18A, to school districts via SDCL §§ 13–6–41 to 13–6–49, inclusive, and to conservation districts per SDCL 38–8A–12. Two classes of laws are not subject to referendum under said amendment: "(1) [T]hose laws declared by the act itself to be necessary for the immediate preservation of the public peace, health, or safety of the state; and, (2) laws necessary for the support of the government and its existing public institutions. *Hodges v. Snyder*, 43 S.D. 166, [174–75,] 178 N.W. 575, 577 (1920)." Lowe, *Restrictions on Initiative and Referendum Powers in South Dakota*, 28 S.D.L.Rev. 53, 55–56 n. 16 (1982). Appellant relies on exception (1).

## DECISION

### I.

MUST EVERY SINGLE SHEET OF A FASTENED, MULTIPLE–PAGE REFERENDUM PETITION CONTAIN A CORRECT HEADING AND A PROPERLY NOTARIZED VERIFICATION STATEMENT? WE HOLD THAT IT DOES NOT.

■ South Dakota Constitution Article III, § 1, expressly reserves and retains the

people's right to initiate and refer municipal legislation. *See Bjornson v. City of Aberdeen*, 296 N.W.2d 896, 901 (S.D.1980); *State ex rel. Freese v. Leyse*, 49 S.D. 488, 490, 207 N.W. 481, 482 (1926). This right, however, is not self-executing and is subject to constitutional, legislative and administrative provisions, statutes and rules so as to protect the implementation and integrity of this process. *See Corbly v. City of Colton*, 278 N.W.2d 459, 461 (S.D.1979); *Headley v. Ostroot*, 76 S.D. 246, 76 N.W.2d 474 (1956); *State ex rel. Richards v. Burkhart*, 44 S.D. 285, 183 N.W. 870 (1921). It is therefore our task to examine the referendum petition here in question in light of all the dictates promulgated by the applicable constitutional provisions, legislative statutes and administrative rules, rather than to read the requirements of each in isolation.

Under SDCL 9–20–9 and SDCL 9–20–10, respectively, municipal referendum petitions "shall be verified as a petition to initiate a law" and "may be made up and signed and *shall be liberally construed as provided by the statute governing an initiated law.*" (Emphasis supplied mine.) SDCL ch. 2–1, et seq., provides the statutory requirements for petitions to initiate a law and SDCL 2–1–1 provides that the form of such petitions "shall be prescribed by the state board of elections." The verification of these petitions is controlled by SDCL 2–1–10, which states:

> Every person who shall circulate and secure signatures to a petition to initiate or submit to the electors any law under the provisions of section 1, article III, of the Constitution, shall before filing said petition with the officer in whose office the same is by law required to be filed, make and attach to the petition an affidavit which shall be prescribed by the state board of elections.

The State Board of Elections has provided the required form and verification of initiative and referendum petitions in ARSD ch. 5:02:08 and ARSD 5:02:08:00(3) specifically provides, inter alia: "When a petition is presented for filing, the person authorized to accept the petition for filing shall determine if it meets the following guidelines for acceptance: ... (3) Each sheet of the petition contains an identical heading and is verified by the circulator."

■ Based solely on this administrative rule, appellant here contends that for a referendum petition to be in proper form, each and every individual piece of paper within the petition must contain an identical heading stating the title of the ordinance or resolution to be referred *and* a properly notarized verification statement. With this contention, however, we disagree.

SDCL 2–1–9 provides:

> It shall not be necessary that one paper shall contain all the signatures, but a single petition may be made up of one or more papers, each having the requisite heading. Separate papers, in proper form and duly signed, may, before filing, be bound together and shall be regarded as one petition and shall be sufficient if the aggregate number of signatures upon all is not less than the number required by this chapter. Blank lines upon additional sheets securely fastened to a top sheet, having the prescribed heading, may be used in obtaining signatures, and shall be regarded, together with the top sheet having the proper heading, as one paper.

Construing this statute, SDCL 2–1–10, and ARSD 5:02:08:00(3) together, and cognizant of the fact that the administrative rule is as binding as these statutes, *Thorsness v. Daschle*, 285 N.W.2d 590, 591 (S.D.1979), we conclude that a valid municipal referendum petition can be in the following forms and be verified in the following manner.

First, a valid municipal referendum petition may consist of separate sheets that were circulated individually if every such sheet contains an appropriate heading. All such sheets, which were circulated by a particular circulator, can then be bound together and verified by attaching a properly notarized verification statement as a last page to the bound sheets. Such a petition comports with the dictates of

SDCL 2–1–9, SDCL 2–1–10, and ARSD 5:02:08:00(3).

Second, a valid municipal referendum petition may consist of a first page containing the appropriate heading which is securely fastened to other pages containing blank lines but no headings. This petition can then be verified by attaching a properly notarized verification statement, by the person who circulated that particular petition, to the end of the petition. This complies with the statutory requirements set forth in SDCL 2–1–9 and SDCL 2–1–10 and constitutes a valid petition.

Finally, as appellant contends, every single sheet of a valid municipal referendum petition can have the appropriate heading and a properly notarized verification statement. This, however, is not required if the petition is in one of the above forms and, of course, would be required if every sheet is circulated by a different person.

■ SDCL 2–1–10 requires the circulator to make and attach to the petition an affidavit. This affidavit establishes the genuineness of the signatures on the petition, *Morford v. Pyle*, 53 S.D. 356, 360, 220 N.W. 907, 909 (1928), and by attaching the verification statement to the end of the petition, the circulator is attesting to the genuineness of all the signatures on the entire petition. This requirement, coupled with the heading requirements of the first two forms outlined above, is sufficient to prevent the inclusion or introduction of petition sheets which were circulated by ghost-circulators as was the case in *Nist v. Herseth*, 270 N.W.2d 565 (S.D.1978).

The trial court found the referendum petition here in question to be valid and we agree with that determination as it comports with the mandates outlined in the second form above.

## II.

WAS THE ACTION OF THE MURDO CITY COUNCIL CREATING A SECOND POLICE OFFICER'S POSITION SUBJECT TO REFERENDUM? WE HOLD THAT IT WAS.

On this issue, appellant Jackson advances three arguments for overruling the trial court's determination. We address them seriatim.

■ First, appellant contends the action taken by the Murdo City Council is exempt from referendum election because it is necessary for the immediate preservation of Murdo's peace, health, and safety. Due to the language of the resolution, we disagree. While South Dakota Constitution Article III, § 1, does exempt from referendum "such laws as may be necessary for the immediate preservation of the public peace, health or safety," this Court has clearly held that: "A law may be necessary for the preservation of the public peace, health, or safety, and still be subject to the referendum, unless the Legislature *declares it* necessary for the immediate preservation of the public peace, health, or safety...." *Hodges v. Snyder*, 43 S.D. 166, 175, 178 N.W. 575, 577 (1920) (emphasis supplied) (cited with approval in *Gravning v. Zellmer*, 291 N.W.2d 751, 756–57 (S.D.1980)). Absent such a declaration or endorsement by the legislature or governing body within the statute, ordinance, or resolution, it is not exempt from a referendum election under South Dakota Constitution Article III, § 1. In this same vein, appellant asserts that based on the Council's decision to hire a second police officer effective that day and based on testimony elicited at trial, the Council's action does evidence the requisite indication of necessity for the immediate preservation of the public peace, health, and safety of Murdo. We, however, refuse to read such a strained contention from the body of the resolution. Having failed to declare its action necessary for the immediate preservation of the public peace, health or safety, the City of Murdo's resolution does not fall within this exception to the people's right to referendum elections. Had the City of Murdo made a declaration in the resolution that the creation of a second police officer's position was necessary for the preservation of the public peace, health or safety of the city, there would no doubt be a different result in this case.

Second, appellant cursorily contends that because the Murdo City Council's action of August 1, 1983, was an oral motion, it was not a "resolution" or "ordinance" and thus not subject to a referendum election. With this contention, we disagree.

 Under SDCL ch. 9–20, municipal "ordinances" and "resolutions" are subject to referendum elections. *See City of Mission v. Abourezk*, 318 N.W.2d 124, 125 (S.D.1982); 5 E. McQuillin, *The Law of Municipal Corporations* § 16.53 (rev. 3rd ed. 1981). "Ordinance" and "resolution" are defined in SDCL 9–19–1, which provides:

The word "ordinance" as used in this title shall mean a permanent legislative act of the governing body of a municipality within the limits of its powers.

The word "resolution" as used in this title shall mean any determination, decision, or direction of the governing body of a municipality of a special or temporary character for the purpose of initiating, effecting, or carrying out its administrative duties and functions under the laws and ordinances governing the municipality.

In *State ex rel. Wagner v. Summers*, 33 S.D. 40, 54, 144 N.W. 730, 734 (1913), this Court stated that the terms "resolution" and "motion" are practically synonymous. In the present case, the City Council's motion-resolution of August 1, 1983, was a determination to authorize a municipal contract for another police officer position and a decision to hire Lewis to fill that position. Such an action most assuredly falls within the definition of a resolution.

Finally, and along the same lines as appellant's second contention on this issue, appellant contends the City Council's action was an executive or administrative act and not subject to referendum. We disagree with appellant's assertions and rationales in this regard.

In support of his contention, appellant attempts to equate the present circumstances with those found in *City of Mission v. Abourezk*, 318 N.W.2d 124. In *Abourezk*, the city passed a resolution to purchase certain property and then executed a contract for the purchase of that property a few days later. Mission electors referred the resolution to purchase and voted against it at the polls, thereby depriving the city of its authority to enter the contract. The property sellers argued that it was the contract that should have been the subject of the referendum and not the resolution to purchase. This Court rejected the sellers' argument stating that nothing in SDCL ch. 9–20 "would require that the contract be submitted to a referendum election." *Id.* at 126.

 Based on these facts, appellant here contends that since the budget ordinance passed in the Spring of 1983 contained sufficient finances to pay two police officers, it was this ordinance that appellee Baker should have referred and not the Council's administrative act in August 1983, of filling a previously authorized position. We cannot equate, however, the initial resolution to purchase property in *Abourezk* with the construction and passing of the budget ordinance in this case. In *Abourezk*, the city's intentions were clear and citizens were apprised of future actions. Here, however, the budget ordinance was merely a lump sum allotment of funds for the police department. Indeed, appellant Jackson, who prepared the budget, testified at trial that "[t]he budget ordinance as published didn't indicate how many officers" would be paid from it. Thus, the ordinary person had no notice of and no way of ascertaining future police personnel resolutions. The first time the Murdo City Council authorized a second police officer position was by the resolution of August 1, 1983, and in this same resolution, the Murdo City Council decided to hire Duane Lewis to fill that position. This latter action was the appropriate subject of a referendum election and not that portion of the budget ordinance which sub silentio contained enough funds for two police officers. The employer-employee relationship arises only out of contract and "the decision or determination of a governing body of a municipality to authorize a municipal

contract is subject to referendum." *Roush v. Town of Esmond,* 73 S.D. 406, 411–12, 43 N.W.2d 547, 550 (1950). That portion of the resolution, here in question, which authorized the hiring of a second police officer, is subject to a referendum election and the trial court's determination in this regard is affirmed.

 Although both legislative and administrative acts of municipal governments are subject to the referendum process in South Dakota, *see Roush v. Town of Esmond,* 43 N.W.2d 547; *State ex rel. Saylor v. Walt,* 66 S.D. 14, 20, 278 N.W. 12, 15 (1938); *State ex rel. Martin v. Eastcott,* 53 S.D. 191, 193, 220 N.W. 613, 614 (1928); and *State ex rel. Wagner v. Summers,* 33 S.D. at 51–52, 144 N.W. at 733, the legislature, having plenary powers over local government by virtue of South Dakota Constitution Article IX, § 1, can delegate to the governing body exclusive decision-making authority. When the legislature grants or vests a particular power in the municipal governing authorities and not the corporate entity, such a grant of power is precluded from referendum elections. *See Citizens For Financially Responsible Gov't v. City of Spokane,* 99 Wash.2d 339, 344, 662 P.2d 845, 849 (1983); *Leonard v. City of Bothell,* 87 Wash.2d 847, 852, 557 P.2d 1306, 1310 (1976); *State ex rel. Haas v. Pomeroy,* 50 Wash.2d 23, 24, 308 P.2d 684, 685 (1957). Examples of where the legislature has granted such power to the municipal governing body to the exclusion of the electorate can be found in SDCL 35–2–1.2 (retail liquor license applications); SDCL 9–45–14 (establishment of street grades); and SDCL 11–7–7 (housing and redevelopment commissions).

 As pertinent to the case at bar, SDCL 9–14–3 grants to the mayor and common council or the governing body the power to appoint all appointive officers. Under SDCL 9–14–1, policemen are appointive officers. We hold that the appointment or hiring of a particular individual as a police officer is an exclusive legislative grant of power to municipal governing bodies under the above-cited statutes and not

subject to a referendum by the electorate. We distinguish this from the establishment of a second policeman's position created by resolution. Resolutions are referable. *Roush v. Town of Esmond,* 73 S.D. at 411, 43 N.W.2d at 550. We note, however, the classes of legislation expressly excepted by the South Dakota Constitution. These apply to municipalities and are incorporated by statutory provision, SDCL 9–19–13, describing the effective date of ordinances and resolutions. This Court has applied constitutional principles enunciated for cases determined at the higher reaches of government and then employed these principles to particular resolutions or ordinances, within the two exceptions. *See State ex rel. Lindstrom v. Goetz,* 73 S.D. 633, 47 N.W.2d 566 (1951); *City of Colome v. Von Seggern Bros. & Ludden,* 56 S.D. 390, 228 N.W. 800 (1930). By virtue of 1907 S.D. Sess. Laws ch. 86, § 39, South Dakota early subjected all acts, both legislative and administrative, to the right of referendum. Seemingly, the power of the people to disagree with the judgment of their local governing body was expressly reserved unto them by the state constitution. The wisdom of such a conclusion is not before this Court. We early addressed the right of the people to refer municipal acts which are administrative in character; in so doing, we stated:

> [I]t seems clear that the Legislature in its wisdom must be left to prescribe what acts ... may be referred, and that courts are without authority to declare limitations where none are prescribed by the Legislature. If other limitations are deemed wise or salutary, the Legislature alone can so declare. Whether the power of referendum may be abused or unwisely exercised, to the embarrassment or injury of individuals or the public, is not left to the courts to determine. They can only declare the law as it is written in the statute.

*State ex rel. Wagner v. Summers,* 33 S.D. at 52, 144 N.W. at 733.

We therefore affirm the trial court's decision that the referendum petition here in

question met the statutory requirements. We further affirm the trial court's decision that the Murdo City Council's authorization to create a second police officer's position was subject to referral by the electorate.

FOSHEIM, C.J. and MORGAN, J., concur.

WOLLMAN, J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, concur in part and dissent in part.

WOLLMAN, Justice (concurring in part, dissenting in part).

I agree fully with the majority opinion's holding that the petition in question was in proper form and that the action of the Murdo city council creating a second police officer's position was subject to referendum. I cannot agree, however, that the decision of the Murdo city council to hire Duane Lewis as a second police officer was not subject to referendum.

The majority opinion holds that the exercise of a power legislatively vested in the governing authorities of a municipality is not subject to referendum election, in contrast to the exercise of a power legislatively vested in the municipal corporate entity itself, citing decisions of the Supreme Court of Washington. As I read the Washington decisions, however, the basis for this distinction in each case was the fact that the power of referendum had its source in city charter. *See, e.g., Citizens for Financially Responsible Gov't,* 99 Wash.2d 339, 662 P.2d 845 (1983); *Leonard v. City of Bothell,* 87 Wash.2d 847, 557 P.2d 1306 (1976); *Haas v. Pomeroy,* 50 Wash.2d 23, 308 P.2d 684 (1957); *Neils v. City of Seattle,* 185 Wash. 269, 53 P.2d 848 (1936); *Harlin v. Superior Court for King County,* 139 Wash. 282, 247 P. 4 (1926); *Walker v. Superior Court for Spokane County,* 87 Wash. 582, 152 P. 11 (1915); *Dolan v. Puget Sound Traction, Light & Power Co.,* 72 Wash. 343, 130 P. 353 (1913); *Ewing v. City of Seattle,* 55 Wash. 229, 104 P. 259 (1909); *Benton v. Seattle Electric Co.,* 50 Wash. 156, 96 P. 1033 (1908). The Washington Court has consistently held

that it would be an impermissible infringement upon the state's legislative authority to permit the exercise of a legislatively granted power to be subject to the power of referendum having its source in municipal law.

As the majority opinion points out, however, the power of the electors of a municipality in this state to submit municipal ordinances and resolutions to referendum election has its source in our state constitution, S.D. Const. art. III, § 1, and in state statute, SDCL ch. 9–20. Accordingly, I simply do not believe that the rationale applied by the Washington Court is applicable to the case at hand.

Were we writing on a clean slate, I would hold that the time has come to give effect to the distinction that other courts have drawn between ordinances and resolutions that are legislative in nature and those which are merely administrative in nature. *See, e.g., Citizens for Financially Responsible Gov't, supra; Leonard v. City of Bothell, supra; Heider v. Common Council of City of Wauwatosa,* 37 Wis.2d 466, 155 N.W.2d 17 (1967); 5 E. McQuillin, *Municipal Corporations* § 16.-55 (rev. 3rd ed. 1981). Under such an analysis, the decision to hire officer Lewis would clearly be characterized as administrative in nature and thus not referable.

Such a holding would, however, represent an outright departure from the position that this court has consistently adhered to regarding the power of municipal electors to refer municipal ordinances and resolutions. *See, e.g., City of Mission v. Abourezk,* 318 N.W.2d 124 (S.D.1982); *Roush v. Town of Esmond,* 73 S.D. 406, 43 N.W.2d 547 (1950); *State ex rel. Saylor v. Walt,* 66 S.D. 14, 278 N.W. 12 (1938); *State ex rel. Martin v. Eastcott,* 53 S.D. 191, 220 N.W. 613 (1928); *State v. Davis,* 41 S.D. 327, 170 N.W. 519 (1919); *State ex rel. Wagner v. Summers,* 33 S.D. 40, 144 N.W. 730 (1913).

In *Summers,* the court was unwilling to add a judicial gloss to the legislatively granted power of municipal referendum elections by restricting the right of refer-

endum to only those resolutions that are legislative in nature. The court held that as amended in 1898, article III, § 1 of the state constitution did not limit or restrict the legislature to authorizing the referendum in municipalities solely to laws or matters having the effect of law. There being no constitutional limitation upon the authority of the legislature, the court concluded that it was not within its prerogative to impose such a limitation through judicial construction or interpretation of the statutes authorizing municipal referendum elections.

The court also held that a municipal resolution encompasses all determinations of a municipal governing board that do not take the form of an ordinance. "Resolution" is presently defined by statute to mean

any determination, decision, or direction of the governing body of a municipality of a special or temporary character for the purpose of initiating, effecting, or carrying out its administrative duties and functions under the laws and ordinances governing the municipality.

SDCL 9–19–1.

As is readily apparent from our decisions, this court has given a broad reading to the municipal referendum provisions of our constitution and statutes. As recently as January of this year we stated:

As a general rule, all legislative matters in which the voters have an interest are subject to the referendum unless they are excepted by constitutional provisions. A state constitutional exception which reserves power to the legislature and precludes review by the people under the referendum is an expression, within sound rules of construction, of a reservation to pass on all things not so specified. Exceptions to the right should be denied the people unless the act in question is plainly included in one of the excepted classes.

*Byre v. City of Chamberlain,* 362 N.W.2d 69, 79 (S.D.1985).

Given the consistency of our holdings on this issue, I conclude that it is for the legislature to narrow the scope of referable resolutions by appropriate amendments to SDCL ch. 9–20 that would except from referendum resolutions purely administrative in nature. True, we no doubt could accomplish the same result by judicial interpretation and construction, *cf. State v. Wikle,* 291 N.W.2d 792 (S.D.1980), but it is more forthright to leave it to the legislative branch to narrow the reach of the referendum statutes. Were we to take the step that the *Summers* court concluded it was unable to take, no doubt the legislature could readily amend SDCL ch. 9–20 to overturn such a decision.

In any event, *Summers* and its progeny have apparently not resulted in paralysis in municipal government. Accordingly, I would affirm the trial court's decision that the decision to hire officer Lewis was referable.

WUEST, Acting Justice (concurring in part, dissenting in part).

I agree with the majority on Issue I and that part of Issue II which holds the declaration must be expressed in the resolution when necessary for the preservation of the public peace, health or safety of the city. However, it is my opinion that the appointment of a second policeman was an administrative act, not subject to a referendum election. Having a mayor and common council, SDCL 9–14–1 and 9–14–3 provide for the appointment of the policeman by the Murdo Mayor with approval of the council.

The appointment of a policeman by the mayor was an administrative act, not an ordinance or resolution subject to referendum. The approval by the council was an administrative act not subject to referendum. *See* Lowe, *Restrictions on Initiative and Referendum Powers in South Dakota,* 28 S.D.L.Rev. 53, 78 (1982); *see also Ruano v. Spellman,* 81 Wash.2d 820, 505 P.2d 447 (1973); *Forman v. Eagle Thrifty Drugs and Mkts., Inc.,* 89 Nev. 533, 516 P.2d 1234 (1973); *State ex rel. Nelson v. Butler,* 145 Neb. 638, 17 N.W.2d 683 (1945).

The minutes prepared by laymen for small cities and school districts often lack the legal niceties compared to those prepared by legal experts. Nonetheless, the minutes were in substantial compliance with the statutes, SDCL 9–14–1 and 9–14–3. Those minutes did not provide for the position of a second policeman. That was accomplished when the appropriation ordinance was adopted.