#23949-a-MILLER, Retired Justice

**2006 SD 112**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DEB ANDERSON,                  Petitioner and Appellant,

v.

THE CITY OF TEA, SOUTH DAKOTA,
A Municipal Corporation, JOHN M.
LAWLER, as Mayor of the City Of
Tea and THE CITY COUNCIL MEMBERS,
ERIC LEVAN, HERMAN OTTEN, DEANNA
ERNSTER, SCOTT CZEPULL, SIDNEY
MUNSON AND JO NILES,             Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRADLEY G. ZELL
Judge

* * * *

THOMAS H. FRIEBERG
KATHRYN A. RITTER, Intern
Frieberg, Nelson & Ask, LLP
Beresford, South Dakota             Attorneys for petitioner
                                             and appellant.

JASON M. HARRIS of
Danforth & Meierhenry, LLP
Sioux Falls, South Dakota            Attorneys for respondents
                                             and appellees.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 28, 2006

OPINION FILED **12/06/06**

#23949

MILLER, Retired Justice

[¶1.] In this appeal we affirm the circuit court and hold that petitions seeking to bring a municipal ordinance to a public vote do not conform to statutory requirements.

[¶2.] Deb Anderson objected to a resolution adopted by the City of Tea that required the construction of sidewalks along various streets and avenues in the municipality. She and others circulated petitions among the residents of Tea attempting to refer the resolution to a public vote. The petitions were filed with the city finance officer, but rejected for failure to conform with statutory formatting guidelines. Anderson requested a writ of mandamus from the circuit court seeking to compel the City to conduct the election. The circuit court, following a hearing, denied Anderson's request "because the Petitions were not self-contained as required by South Dakota law." Anderson appeals. We affirm.

**Facts and Procedural History**

[¶3.] The parties stipulated to the following basic facts.

- On February 7, 2005, the City of Tea, acting through its Common Council adopted Resolution No. 05-02-03 entitled Resolution of Necessity—Resolution Declaring the Necessity to Construct Sidewalk on Various Streets and Avenues in Tea, South Dakota and Assessing the Cost of Each Lot or Tract of Land Benefiting Thereby (hereinafter "Resolution").
- Resolution No. 05-02-03 was published in the *Tea Champion* on February 23, 2005.
- Within twenty (20) days of the publication of Resolution No. 05-02-03, Anderson with assistance of legal counsel and in conjunction with other qualified electors of the City of Tea, prepared, circulated, and signed petitions protesting the passage of the resolution and petitioning that the resolution be submitted to a vote of the qualified and registered electors of the City of Tea for their approval or rejection, as provided by law.

-1-

- The signatures contained a sufficient number of qualified voters in order to require a referendum election on the resolution of necessity.
- On March 14, 2005, all of the petitions so circulated were filed with the finance officer for the City of Tea.
- Based upon advice of the Secretary of State and legal counsel, it was determined that the referendum petitions did not conform to the requirements of State Law.

[¶4.]    The appeal raises the following issue:

Did the circuit court err in determining that the referendum petitions did not conform to South Dakota law?

**Standard of Review**

[¶5.]    Our rules of statutory construction are as follows:

Questions of law such as statutory interpretation are reviewed by the Court de novo. . . .  The purpose of statutory construction is to discover the true intention of the law which is to be ascertained primarily from the language expressed in the statute.  The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.  Words and phrases in a statute must be given their plain meaning and effect.  When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed.  Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.  But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result.  When the question is which of two enactments the legislature intended to apply to a particular situation, terms of a statute relating to a particular subject will prevail over the general terms of another statute.

Martinmaas v. Engelmann, 2000 SD 85, ¶49, 612 NW2d 600, 611 (quoting Moss v.

Guttormson, 1996 SD 76, ¶10, 551 NW2d 14, 17 (citing U.S. West Communications,

Inc. v. Public Util. Comm'n, 505 NW2d 115, 122- 23 (SD 1993) (citations omitted)).

## Analysis and Decision

[¶6.] The sole issue before this Court is whether each page of a municipal referendum petition must be signed and verified by the circulator. Anderson argues that the circuit court erred when it determined that the referendum petitions were not self-contained because only the last, rather than each individual page, contained the required verification. She argues that only SDCL 9-20-9 applies to municipal referendums and that SDCL 2-1-9, which requires that each page of a petition must be verified, is not applicable to municipal election petitions.

[¶7.] This Court previously addressed the issue of verification in two key cases. First, in *Corbly v. City of Colton*, 278 NW2d 459 (SD 1979), the Court analyzed SDCL 9-20-9, SDCL 2-1-10 and SDCL 2-1-11, as they read at the time, to determine if a referendum petition can be valid without a verifying affidavit by the circulator.

[¶8.] In examining the issue of verification, this Court held that "[v]erification, as used in connection with referendum petitions, means the swearing under oath by the circulator that he or she has personally circulated the petition and attests to the validity of the signatures." *Id*. at 461 (citing Nist v. Herseth, 270 NW2d 565 (SD 1978)). "Requirements for circulation and verification of referendum petitions, whether statutory or administratively adopted, are substantial in character and not merely requirements of form." *Id*. (citing *Nist*, 270 NW2d 565 (SD 1978); Headley v. Ostroot, 76 SD 246, 76 NW2d 474 (1956)). Therefore, verification requirements must "have been substantially complied with in order to render the petition valid." *Id*.

#23949

[¶9.]     In reiterating that the provisions of SDCL chapter 2-1 are applicable to municipal elections, we held in *Baker v. Jackson*, 372 NW2d 142 (SD 1985), that SDCL 2-1-9 and 2-1-10 are likewise applicable to the process of circulating municipal referendum petitions.[1] The issue in *Baker* was almost identical to the question before us today. The *Baker* court was asked to determine whether every single sheet of a fastened, multiple-page referendum petition must contain a correct heading and a properly notarized verification statement. *Id*. at 144.

[¶10.]     In answering that question, this Court's task was to examine the referendum petition "in light of all the dictates promulgated by the applicable constitutional provisions, legislative statutes and administrative rules, rather than to read the requirements of each in isolation." *Id*. at 145. We then analyzed SDCL 9-20-9, 9-20-10, 2-1-9 and 2-1-10. *Id*. At the time, SDCL 2-1-9 provided:

> It shall not be necessary that one paper shall contain all the signatures, but a single petition may be made up of one or more papers, each having the requisite heading. Separate papers, in proper form and duly signed, may, before filing, be bound together and shall be regarded as one petition and shall be sufficient if the aggregate number of signatures upon all is not less than the number required by this chapter. Blank lines upon additional sheets securely fastened to a top sheet, having the prescribed heading, may be used in obtaining signatures, and shall be regarded, together with the top sheet having the proper heading, as one paper.

---

1.     In *Baker*, we also held that under the South Dakota Constitution Article III, § 1, both legislative and administrative acts are subject to referendum election. 372 NW2d at 148-49. This part of the decision in *Baker* was later abrogated by legislation excluding administrative decisions from the referendum process. *See* 1986 SD Laws ch 73, §§ 1-3 *codified at* SDCL 9-20-18, 9-20-19 and 7-18A-15.1 respectively.

#23949

SDCL 2-1-9 (amended 1986). In considering that statute, as well as SDCL 2-1-10 and ARSD 5:02:08:00(3), we concluded in *Baker* that a municipal referendum petition could be valid in the following three forms:

> First, a valid municipal referendum petition may consist of separate sheets that [are] circulated individually if every such sheet contains an appropriate heading. All such sheets, which [are] circulated by a particular circulator, can then be bound together and verified by attaching a properly notarized verification statement as a last page to the bound sheets. Such a petition comports with the dictates of SDCL 2-1-9, SDCL 2-1-10, and ARSD 5:02:08:00(3). Second, a valid municipal referendum petition may consist of a first page containing the appropriate heading which is securely fastened to other pages containing blank lines but no headings. This petition can then be verified by attaching a properly notarized verification statement, by the person who circulated that particular petition, to the end of the petition. This complies with the statutory requirements set forth in SDCL 2-1-9 and SDCL 2-1-10 and constitutes a valid petition. Finally, as appellant contends, every single sheet of a valid municipal referendum petition can have the appropriate heading and a properly notarized verification statement. This, however, is not required if the petition is in one of the above forms and, of course, would be required if every sheet is circulated by a different person.

*Id*. at 145-46.

[¶11.] In *Baker*, we again discussed the importance of the statutory verification requirements of SDCL 2-1-10.

> SDCL 2-1-10 requires the circulator to make and attach to the petition an affidavit. This affidavit establishes the genuineness of the signatures on the petition, *Morford v. Pyle*, 53 SD 356, 360, 220 NW 907, 909 (1928), and by attaching the verification statement to the end of the petition, the circulator is attesting to the genuineness of all the signatures on the entire petition. This requirement, coupled with the heading requirements of the . . . two forms [that constitute valid multi-page petitions when circulated by one individual], is sufficient to prevent

the inclusion or introduction of petition sheets . . . circulated by ghost-circulators as was the case in *Nist v. Herseth*, 270 NW2d 565 (SD 1978).

*Id*. at 146.  Therefore, based solely on our prior holding in *Baker*, it would appear that Anderson's petitions would be valid.  Moreover, our statutes have traditionally indicated that referendum petitions are to be liberally construed as being in compliance with the law.  *See* SDCL 2-1-11 (1939); 9-20-10 (1957) (formerly SDC § 45.1012 (1939)).  Since our decision in *Baker,* however, it is apparent from amendments made to the statutes that the legislature intended to increase the stringency of petition verification requirements.

[¶12.]        In addition to SDCL chapters 9-20 and 2-1, the provisions of SDCL chapters 12-1[2] and 9-13[3] are also applicable to municipal referendum elections.  In defining petition, SDCL 12-1-3(8) states, "If multiple sheets of paper are necessary to obtain the required number of signatures, each sheet shall be self-contained and separately verified by the circulator[.]"  SDCL 12-1-3(8) (2000).  SDCL 9-13-11 provides, "[A] petition may be composed of several sheets, which shall have identical headings and shall be verified under oath by the persons circulating it, attesting the legality of the signatures thereon."  SDCL 9-13-11 (1990).  SDCL 2-1-9, amended

---

2.      SDCL 12-1-2 provides:

> The provisions of this title apply to . . . municipal . . . elections unless otherwise provided by the statutes specifically governing their elections or this title.

3.      SDCL 9-20-14 provides:

> The elections provided for in this chapter shall be governed by the provisions of chapter 9-13. . . .

since we cited it in *Baker*, now provides, "A single petition may be made up of one or more papers, **EACH** having the requisite heading and verification." SDCL 2-1-9 (1986) (emphasis added).

[¶13.]     When reading the existing applicable statutes together, it is clear that the legislature intended that in order to be valid, each sheet of paper in a circulated petition shall have a heading and a verification block. Although our statutes indicate that petitions are to be liberally construed, the fact that not one but several more recently enacted applicable statutes have set out verification requirements for each sheet of paper, clearly articulates the legislature's overriding concern for the integrity of signature verification.

[¶14.]     The legislature has also mandated that the State Board of Elections promulgate rules prescribing the referendum petition format. SDCL 2-1-3, 2-1-10, 9-20-9, 12-1-3(8), and 12-1-9. The format for municipal referendum petitions is published under ARSD 5:02:08:16. This form, like all other South Dakota election petition formats, follows the statutory requirement that each page of a petition must include a heading and a verification block.

[¶15.]     The record indicates that 19 petitions were circulated and subsequently submitted by Anderson and others. The petitions were multi-page and bound by a staple. The heading took up all of the first two pages and part of the third. The instructions and several signature lines were included on the third page. Varying numbers of additional signature pages without heading or verification block were included in each petition. The final signature page contained the introduction to a verification block with the circulator's signature and

#23949

notarization running over onto a final additional page. These petitions do not conform to the unambiguous statutory requirements.[4]

[¶16.]    Affirmed.

[¶17.]    GILBERTSON, Chief Justice, and, SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶18.]    MILLER, Retired Justice, sitting for MEIERHENRY, Justice, disqualified.

---

4.    A thorough review of the statutes applicable to the issue at question in this case reveals our legislature's unmistakable concern for the potential that unverified signatures could be included in any petition, consisting of multiple sheets of paper that lacks verification on any sheet of paper therein. The onus thus falls on the petitioner to insure that each sheet of paper in a multiple-sheet petition is a self-contained document in compliance with our statutes and regulations.